Frank **BORDELL**, Douglas Allen, Business Agent Local 301AE, International Union of Electricians, Electrical, Salaried Machinists & Furniture Workers, AFL–CIO and Local 301AE, International Union of Electricians, Electrical, Salaried Machinists & Furniture Workers, AFL–CIO, Plaintiffs,

v.

**GENERAL ELECTRIC COMPANY, A.E. Kakretz**, Manager, General Electric Co., United States Department of Energy and Honorable John Herrington, Secretary, U.S. Department of Energy, Defendants.

No. 88–CV–1155.

United States District Court, N.D. New York.

March 16, 1990.

Thomas E. Carpenter, Government Accountability Project, Washington, D.C., and Peter Henner, Albany, N.Y., for plaintiffs.

Frederick J. Scullin, Jr., U.S. Atty., and William A. Pease, Asst. U.S. Atty., Syra-

cuse, N.Y. (Felix V. Baxter, and Vincent M. Garvey, Civ. Div., Washington, D.C., of counsel), for Federal defendants.

Akin Gump Strauss Hauer & Feld, Washington, D.C. (Michael J. Madigan, W. Randolph Teslik and Lars H. Liebeler, Washington, D.C., and Susanne E. Hawkins, Schenectady, N.Y., of counsel), for defendant General Elec. Co.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### Introduction

This is an action by current and former employees of the General Electric Co., Inc., employed at the Knolls Atomic Power Laboratory ("KAPL") in Niskayuna, New York, and Local 301AE, International Union of Electricians, Electrical, Salaried Machinist and Furniture Workers of the AFL–CIO ("IUE"), seeking declaratory and injunctive relief. Plaintiffs challenge a newsletter issued by the defendants which the plaintiffs allege is an unconstitutional infringement of their First Amendment rights to free speech and association. Plaintiffs further allege that the newsletter violates 5 U.S.C. § 7211, which protects employees' right to petition Congress, and Public Law 100–440, Section 619 of the Treasury, Postal Service and General Appropriations Act of 1989. Plaintiffs seek declaratory judgment and injunctive relief preventing defendants from enforcing the directive against any current or former employees and requiring defendants to give notice to employees that the directive is rescinded. Defendants, the General Electric Co., Inc. ("GE"); A.E. Kakretz, general manager of KAPL; the Department of Energy ("DOE"); and John S. Herrington, the Secretary of Energy, have moved for dismissal pursuant to Fed.R.Civ.P. 12, or in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiffs have cross-moved for summary judgment pursuant to Fed.R.Civ.P. 56.

### Background

Plaintiffs Frank Bordell and Robert Stater are former employees at KAPL, and plaintiff Douglas Allen is a current employee. The three are members of plaintiff IUE. The defendant GE performs research and development work pertaining to the United States Naval Nuclear Propulsion Program at the KAPL, under a government defense contract with the DOE.

The federal government owns the land, buildings, machinery and equipment at the KAPL site, and provides funding for the GE workforce there. GE is responsible for the security of the plant, which includes classification and control of information and documents, security checks on personnel, and supervised access into and out of the plant.

GE periodically issues newsletters to employees pertaining to security procedures and policies at the plant. On September 15, 1988, GE circulated a "Security Newsletter" titled " 'No Comment' Policy for Classified/Sensitive Information." The newsletter warned employees not to discuss classified and "sensitive unclassified" information outside of the plant, even if such information had entered the public domain through another avenue, such as a news report. In addition, the newsletter stated that "[i]t is best to avoid any discussion of [Naval Nuclear Propulsion] Program work," and recommended that questions regarding such discussions could be directed to the KAPL classification officer. The newsletter also stated that:

> "[a]nother important security aspect of the Naval Nuclear Propulsion Program is that all public releases of information concerning program work (i.e. technical meetings, forums, etc.) must be reviewed and approved prior to release.

The letter stated further that:

> while employed at KAPL, if you are required to make statements about Program work to the public, *formal approval* must be obtained by use of a KAP–418 form.

(emphasis in original)

Finally, the letter informed KAPL employees that unauthorized release of information could jeopardize their jobs and result in fines of up to $100,000 and up to life imprisonment.

The plaintiffs commenced this action on November 4, 1988, alleging that the newsletter was an impermissible restraint on free speech, that the term "sensitive unclassified information" contained in the newsletter is unconstitutionally vague, that it imposes a prior restraint violative of the First Amendment, and that it violates 5 U.S.C. § 7211[1], and P.L. 100–440, Section 619 of the Treasury and Post Office Appropriations Act ("Section 619").[2] Specifically, the plaintiffs allege that the newsletter would inhibit their efforts to disclose health and safety threats to workers and the public created by KAPL's operations.

GE subsequently issued another newsletter in July 1989, the stated purpose of which was to "[supplement] the September 15th edition and [elaborate] on the previous guidance." The second newsletter is much more detailed than the first, and enumerates a number of the statutory and regulatory restrictions on the release of classified and sensitive unclassified government information. It states that, "[a]s is the case with all Security Newsletters, this Newsletter must be read in the context of the applicable statutes and regulations referred to below." The July 1989 newsletter also notes that:

> it is the policy of the Departments of Energy and the Navy and of the General Electric Company that the systems for controlling dissemination of classified and otherwise militarily sensitive information *are not to be used to prevent proper reporting of matters involving compliance with health, safety, or environmental standards or regulations.*

(emphasis added)

The defendants argue that the newsletters do nothing to alter the rights and restrictions contained in the federal statutes and regulations governing the release and protection of classified and sensitive unclassified military information. In their motion to dismiss the complaint or for summary judgment, defendants contend that the plaintiffs lack standing to sue, and that the plaintiffs have not presented a ripe "case or controversy" for review by the court, in that the "chill" on protected speech alleged by plaintiffs does not state a sufficient prospective injury, and that the second newsletter has made plaintiffs' claims moot.

## Discussion

Plaintiffs do not dispute that the compelling governmental interest in national security applies to the Naval Nuclear Propulsion Program work performed at KAPL. Nor do plaintiffs contest the validity or applicability of the various federal statutes and regulations governing release of classified and sensitive unclassified information. Plaintiffs argue, however, that the September 15, 1988, newsletter imposes restrictions on the release of information not covered by the regulations, under threat of firing, fines and imprisonment, and thus places an impermissible prior restraint and chill on speech protected by the First Amendment. Plaintiffs state in their complaint that they "simply seek the unfettered ability to communicate unclassified information on environmental and public safety abuses at the KAPL facility." Complaint, para. 28.

A newsletter or policy directive may be challenged on First Amendment grounds, but a justiciable Article III "case or contro-

---

1. Title 5 U.S.C. § 7211, titled "Employees' Right to Petition Congress," states:

 The right of employees, individually or collectively, to petition Congress or a Member of Congress, or to furnish information to either House of Congress, or to a committee or Member thereof, may not be interfered with or denied.

2. Section 619 provides, in pertinent part:

 No funds appropriated in this or any other Act for fiscal year 1989 may be used to imple-

ment or enforce the agreements in Standard Forms 189 and 4193 of the Government or any other nondisclosure policy, form or agreement if such policy, form or agreement:

 (1) concerns information other than that specifically marked as classified; or unmarked but known by the employee to be classified; or, unclassified but known by the employee to be in the process of a classification determination. . . .

versy" may exist only insofar as the directive places restrictions on speech beyond those contained in valid statutes and regulations. *National Student Ass'n v. Hershey,* 412 F.2d 1103 (D.C.Cir.1969); *cf. United Public Workers v. Mitchell,* 330 U.S. 75, 91, 67 S.Ct. 556, 565, 91 L.Ed. 754 (1947). Therefore, the analysis of plaintiffs' claims must begin with the statutes and regulations pertaining to disclosure of information at KAPL.

As a part of the government defense industry, performing research and development work in the Naval Nuclear Propulsion Program ("NNPP"), the KAPL facility and its employees are subject to various constraints on the dissemination of information in the interest of national security.[3] The Atomic Energy Act of 1954, 42 U.S.C. § 2011 *et seq., as amended,* provides for the classification of restricted data, i.e., all data concerning (1) design, manufacture, or utilization of nuclear weapons; (2) the production of special nuclear material; and (3) the use of special nuclear material in the production of energy.

Executive Order No. 12356, 47 Fed.Reg. 14874 (April 2, 1982), prescribes a uniform system for classifying, declassifying and safeguarding national security information. It encompasses the activities of employees, contractors, and licensees or grantees of an agency. The order, among other things, (1) directs that agencies should establish controls to ensure that classified information is treated in a way that will ensure adequate protection and prevent access by unauthorized persons; (2) prohibits dissemination of classified information outside the executive branch absent conditions that will ensure it will be given the protection afforded it in the executive branch; and (3) provides sanctions for the improper disclosure of classified information to unauthorized persons.

There are also restrictions on the disclosure of "sensitive unclassified" information, which falls into two categories: (1) Naval Nuclear Propulsion Information ("NNPI"), and (2) Unclassified Controlled Nuclear Information ("UCNI"). NNPI, defined and protected under 10 U.S.C. § 130, includes information on shipboard and prototype naval nuclear propulsion plants, technical requirements pertaining to how those plants are designed, analyzed, and operated, and standards and practices that apply to nuclear powered ships and Navy support facilities. While the definitions of NNPI contained in the statutes and regulations do not identify specific exemptions, information on personnel records, occupational radiation exposure, documents connected with laboratory administrative and housekeeping services, and information about occupational safety, health and environmental conditions are not protected. UCNI, protected under the Atomic Energy Act, is information relating to nuclear energy defense programs, including (1) the design of production or utilization facilities; and (2) security measures for the protection of production or utilization facilities and of nuclear material. 42 U.S.C. § 2168. Specific exemptions from protected UCNI are listed in 10 C.F.R. 1017, and include radiation exposure data, and health, safety and environmental information.

In sum, the second newsletter informs employees that their rights to disclose information regarding activities at KAPL are defined by the applicable statutes and regulations, which permit the dissemination of information regarding health and safety issues. Plaintiffs do not challenge the validity of the regulations. This presents the question whether plaintiffs' claims have become moot upon the issuance of the second newsletter.

■ As previously stated, the constitutional validity of a newsletter or policy directive, such as the one that is the subject of this dispute, may be challenged only to the extent that it creates restrictions not already imposed by valid statutes and regulations. *See Hershey,* 412 F.2d at 1116–17. However, those portions of a directive which arguably impose restrictions on speech beyond the scope of such statutes

---

**3.** The Naval Nuclear Propulsion Program was established by Executive Order No. 12344 (February 1, 1982) in recognition of its "crucial importance to national security...." *Id.*

and regulations may be subject to attack on First Amendment grounds. *Id.* at 1119.

As the Supreme Court has stated:

The federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues, "concrete legal issues, presented in actual cases, not abstractions," are requisite. ... The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). Accordingly, "[a] genuine threat must be demonstrated if a case or controversy, within the meaning of Art. III of the Constitution and the Declaratory Judgment Act, may be said to exist." *Ellis v. Dyson*, 421 U.S. 426, 434, 95 S.Ct. 1691, 1696, 44 L.Ed.2d 274 (1975). Such threat must be shown to exist at the time of the court's review, and not simply on the date the action is initiated. *See, e.g., Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973); *United States v. Munsingwear, Inc.*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950).

There are portions of the first newsletter—those which state that official approval is required for release of *any* information related to the Naval Nuclear Propulsion Program—that apparently extend beyond the scope of the applicable statutes and regulations. These could conceivably have resulted in a "chilling effect" sufficient to confer standing on the plaintiffs and to support a claim of a First Amendment violation.[4] However, the second newsletter plainly states, as defendants' counsel stated at oral argument, that the rights of employees are governed by the existing statutes and regulations pertaining to the dissemination of NNPP information. It is clear that any constitutional infirmity infecting the first newsletter has been cured by the second. Plaintiffs seek "the unfettered ability to communicate unclassified information on environmental and public safety abuses at the KAPL facility." That is what they have, except as limited by unchallenged federal statutes and regulations. Thus, there is no extant justiciable case or controversy presented by the plaintiffs' First Amendment claims over which the court could exercise jurisdiction.

Plaintiffs also claim that the first newsletter violated 5 U.S.C. § 7211 and Public Law 100–440, Section 619 of the Treasury, Postal Service and General Appropriations Act of 1989. As previously stated, 5 U.S.C. § 7211 prohibits interference with the right of "employees" to petition Congress. Defendants argue correctly that plaintiffs are not covered by Section 7211, since it applies only to federal employees, and not to employees of government contractors.

---

4. Plaintiffs are required to demonstrate a "direct threat of punishment" in order to present a justiciable dispute. *United Public Workers v. Mitchell*, 330 U.S. 75, 88, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947). Their ability to do this is questionable. The defendants present affidavits stating, *inter alia*, that since the issuance of the September 15, 1988 newsletter, plaintiffs Bordell, Allen and Stater have been quoted more than 30 times in articles in local newspapers regarding environmental, health, safety or union matters at KAPL, and that a KAPL employee, John Shannon, testified before a Congressional subcommittee on environmental, occupational health and safety matters. They did not seek approval for the release of such information. *See* affidavit of Richard Guida, associate director for regulatory affairs, Naval Nuclear Propulsion Program, at para. 4–5 and affidavit of Gerald Sabian, manager of technology operations at KAPL, at para. 7–9. Plaintiffs do not controvert these assertions, or contend that these or other employees or former employees have been punished in any way for violations of statements in the first newsletter.

The term "employee" as it applies in Title 5 of the United States Code is defined in 5 U.S.C. § 2105. Section 2105 states:

(a) For the purpose of this title, "employee," except as otherwise provided by this section or when specifically modified, means an officer and an individual who is—

(1) appointed in the civil service by one of the following acting in an official capacity—

(A) the President;

(B) a Member or Members of Congress, or the Congress;

(C) a member of a uniformed service;

(D) an individual who is an employee under this section;

(E) the head of a Government controlled corporation; or

(F) an adjutant general designated by the Secretary concerned under section 709(c) of title 32;

(2) engaged in the performance of a Federal function under authority of law or an Executive act; and

(3) subject to the supervision of an authority named by paragraph (1) of this section, or the Judicial Conference of the United States, while engaged in the performance of the duties of his office.

Workers who have not been "appointed" according to the provisions of subsection (1) are not "employees" within the meaning of Title 5 of the United States Code. *See Horner v. Acosta,* 803 F.2d 687 (Fed.Cir. 1986). This includes government contractor employees such as those in the instant case. *Id.* at 693–94. Since the definition of "employee" is not specifically modified by 5 U.S.C. § 7211, the statutory definition in Section 2105 applies.

Plaintiffs argue that the legislative history of Section 7211 indicates that it was Congress' intent that the statute should also apply to employees of federal contractors. However, it is well-settled that in determining the scope of a statute, the court looks first to the language of the statute. If the statutory language is unambiguous, in the absence of "a clearly expressed legislative intent to the contrary,

that language must ordinarily be regarded as conclusive." *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). The language of Section 7211 is not ambiguous, nor do the plaintiffs assert that it is. Defendants' arguments that the legislative history of Section 7211 indicates that it was intended to apply to federal employees *only* are equally as compelling as plaintiffs' arguments to the contrary. Thus, the court relies on the language of the statute for the definition of "employee," particularly in light of the statement by several courts that the elements of Section 2105 are to be strictly applied. *See, e.g., Horner,* 803 F.2d at 691, *McCarley v. Merit Systems Protection Board,* 757 F.2d 278, 280 (Fed. Cir.1985). The provisions of Section 7211 are not applicable to the plaintiffs.

■ The plaintiffs' claim under Section 619 must also be dismissed. Section 619 provides, in pertinent part:

No funds appropriated in this or any other Act for fiscal year 1989 may be used to implement or enforce the agreements in Standard Forms 189 and 4193 of the Government *or any other nondisclosure policy, form or agreement,* if such policy, form or agreement:

(1) concerns information other than that specifically marked as classified; or unmarked but known by the employee to be classified; or unclassified but known by the employee to be in the process of a classification determination....

(emphasis added)

It is not necessary to delve into the merits of plaintiffs' claim under Section 619. Section 619 governs expenditures made only in the fiscal year beginning October 1, 1989. Plaintiffs complain of expenditures made to publish a newsletter on September 15, 1988. Although plaintiffs argue that a statute with identical language was in effect in 1988, and that defendants' actions constitute "ongoing enforcement," appropriation measures are only operative for the period specified by the statute. *See*

*National Ass'n of Regional Councils v. Costle*, 564 F.2d 583, 586–87 (D.C.Cir.1977).

### Conclusion

Plaintiffs' claim that the September 15, 1988, newsletter violates their First Amendment rights is dismissed for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1). Plaintiffs' claims that defendants violated 5 U.S.C. § 7211 and Section 619 are dismissed for failure to state a claim upon which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6). The plaintiffs' cross-motion for summary judgment is denied.

IT IS SO ORDERED.