922 F.2d 1057
 6 Indiv.Empl.Rts.Cas. 133
 Frank BORDELL, Plaintiff-Appellant,
v.
GENERAL ELECTRIC COMPANY; A.E. Kakretz, Manager, General
Electric Co.; United States Department of Energy;
and Honorable John Herrington,
Secretary, U.S. Department of
Energy, Defendants-Appellees.
 No. 530, Docket 90-6176.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 26, 1990.
Decided Jan. 11, 1991.
 
 Thomas J. Mack, Washington, D.C. (Thomas E. Carpenter, Washington, D.C., Peter Henner, Albany, N.Y., of counsel), for plaintiff-appellant.
 W. Randolph Teslik, Washington, D.C. (Lars H. Liebler, Akin, Gump, Strauss, Hauer & Feld, of counsel), for defendants-appellees General Elec. Co. and A.E. Kakretz, Manager, General Elec. Co.
 E. Roy Hawkens, Appellate Staff Atty., Washington, D.C. (Stuart M. Gerson, Asst. Atty. Gen., Douglas N. Letter, Appellate Staff Atty., Washington, D.C., Frederick J. Scullin, Jr., U.S. Atty., N.D.N.Y., Syracuse, N.Y., of counsel), for defendants-appellees U.S. Dept. of Energy and Honorable John Herrington, Secretary, U.S. Dept. of Energy.
 Before OAKES, Chief Judge, and CARDAMONE and McLAUGHLIN, Circuit Judges.
 OAKES, Chief Judge:
 
 
 1
 This is an appeal from a judgment of the United States District Court for the Northern District of New York, Neal P. McCurn, Chief Judge, dismissing appellant's First Amendment and statutory claims. Because we find that appellant does not have standing to challenge appellees' conduct, we vacate and remand with instructions to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).
 
 BACKGROUND
 
 2
 By executive order, the Naval Nuclear Propulsion Program (the "Program") was established to administer all aspects of the federal nuclear propulsion policy. See Exec. Order No. 12344, 47 Fed.Reg. 4979 (1982), reprinted in 42 U.S.C. Sec. 7158 note at 504-05 (1988). Pursuant to that authority, the Program is responsible for the nuclear propulsion plants aboard 132 nuclear powered submarines, nine nuclear powered guided missile cruisers, five nuclear powered aircraft carriers, as well as many land-based nuclear facilities. In addition, the Program conducts nuclear research and development at many federal facilities, including the Knolls Atomic Power Laboratory ("KAPL") in Schenectady, New York. Although the federal government owns KAPL's land, buildings, and machinery, funds the KAPL work force, and oversees production quotas and schedules at the plant, General Electric administers KAPL's day to day operations, including the making of personnel and security decisions.
 
 
 3
 Because KAPL employees are continuously exposed to classified and sensitive information, KAPL has established an elaborate security procedure to ensure compliance with federal anti-disclosure laws.[1] Before employees are issued entry badges or allowed access to classified or sensitive information, they must attend security education courses, where a specialist explains the details of KAPL's security procedures. Employees are then required to sign non-disclosure statements. After their entry badges are issued, employees receive instruction on how to treat classified and sensitive information. Continuous security lectures, as well as an annual reorientation program, reinforce KAPL's security procedures. Finally, regular security newsletters are distributed to enhance employee awareness of the sensitive nature of KAPL's operations, and to update employees about changes in KAPL's security policy.
 
 
 4
 On September 15, 1988, KAPL distributed a security newsletter to all employees entitled " 'NO COMMENT' POLICY FOR CLASSIFIED/SENSITIVE INFORMATION." The primary purpose of the newsletter was to discourage employees from publicly commenting on information that "may appear without authorization in the public domain." According to the newsletter, "[i]n such cases, commenting on the information could result in greater damage to national security than would occur if no comment were made." As a result, the newsletter stated "[i]t is best to avoid any discussion of Program work. Where this is not practical, guidance must be sought from the KAPL Classification Officer." The newsletter then reminded employees that:
 
 
 5
 all public releases of information concerning program work (i.e. technical meetings, forums, etc.) must be reviewed and approved prior to release.... Therefore, while employed at KAPL, if you are required to make statements about Program work to the public, formal approval must be obtained by use of a KAP-418 form.
 
 
 6
 The newsletter concluded that "[a]ny deviation from the above policy is unacceptable," and that unauthorized disclosures are punishable by dismissal, fines up to $100,000 and/or life imprisonment.
 
 
 7
 On November 4, 1988, former KAPL employee Frank Bordell, other former and current KAPL employees, and Local 301AE of the International Union of Electricians, Electrical, Salaried Machinist and Furniture Workers of the AFL-CIO, initiated the current action, seeking declaratory and injunctive relief. According to plaintiffs, the newsletter overstates the prohibitions of the federal anti-disclosure laws, and therefore violates the First Amendment by deterring legitimate employee speech on matters of "grave public concern," such as environmental, health and safety conditions at KAPL. In addition, the complaint alleges that the newsletter violates section 619 of the Treasury, Postal Service and General Government Appropriations Act of 1989 (the "Treasury Act"), Pub.L. 100-440, Sec. 619, 102 Stat. 1756 (1988), which prohibits certain federal expenditures that implement or enforce nondisclosure policies.[2]
 
 
 8
 While the suit was pending, KAPL issued a subsequent security newsletter in July 1989 that was to "supplement[ ] the September 15th [newsletter] and elaborate[ ] on the previous guidance." This newsletter focused on many details that had been omitted from the September newsletter, including the fact that all security newsletters "must be read in the context of the applicable statutes and regulations," and that KAPL's security policy was "not to be used to prevent proper reporting of matters involving compliance with health, safety, or environmental standards." In addition, the July newsletter stated that classified or otherwise militarily sensitive information must receive "proper protection and control in accordance with federal statutes and regulations." After a lengthy description of the statutory and regulatory scheme, the July newsletter indicated that employees could always "seek assistance and guidance from trained information protection professionals in interpreting the information security requirements." Finally, the newsletter concluded by emphasizing that the September newsletter had not been meant to "preclude employees from reporting what they believe[d] to be problems to governmental oversight organizations."
 
 
 9
 After issuing the July newsletter, defendants moved to dismiss the complaint on the grounds that plaintiffs did not have standing to sue and that any possible defects in the September newsletter had been cured by the July newsletter. The district court, in a memorandum order and opinion dated March 16, 1990, dismissed plaintiffs' constitutional challenge to the September newsletter for lack of subject matter jurisdiction on the ground that the subsequent July newsletter rendered any constitutional violation moot. Bordell v. General Electric Co., 732 F.Supp. 327, 331 (N.D.N.Y.1990). In addition, after noting that the September newsletter apparently had not deterred employee speech on environmental, health and safety issues, the district court questioned whether plaintiffs had standing to bring the action. Id. at 331 n. 4. Finally, the district court dismissed plaintiffs' claim under section 619 of the Treasury Act on the ground that the Act was not in effect at the time the September newsletter was published. Id. at 332.
 
 
 10
 A notice of appeal from the district court's decision was timely filed on May 29, 1990. However, due to the notice's jurisdictional defects, a panel of this Court dismissed all appellants other than Frank Bordell on July 6, 1990, and denied a petition for rehearing on the matter on October 2, 1990. As a result, on this appeal we consider only whether the district court erred in dismissing the complaint as to Frank Bordell.
 
 DISCUSSION
 
 11
 The doctrine of standing, though riddled with ambiguities, is grounded in certain basic constitutional principles. As the Supreme Court has noted, "[t]he fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). Thus, irrespective of the merits of Bordell's substantive claims, Article III requires us, as a threshold matter, to determine "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Warth v. Seldin, 422 U.S. 490, 498-99, 95 S.Ct. 2197, 2204-05, 45 L.Ed.2d 343 (1975) (quoting Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)).
 
 
 12
 To conclude that Bordell has met this constitutional minimum, we must be satisfied that he has suffered "an injury in fact; that is ... some 'threatened or actual injury resulting from the putatively illegal action.' " Virginia v. American Booksellers Ass'n, 484 U.S. 383, 392, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988) (quoting Warth, 422 U.S. at 499, 95 S.Ct. at 2205)); see L. Tribe, American Constitutional Law Sec. 3-16 (2d ed. 1988). While this "injury in fact" requirement escapes precise definition, the Supreme Court has concluded that:
 
 
 13
 Abstract injury is not enough. The plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as a result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical."
 
 
 14
 City of Los Angeles v. Lyons, 461 U.S. 95, 101-02, 103 S.Ct. 1660, 1664-65, 75 L.Ed.2d 675 (1983) (quoting Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923)); see also O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); Golden v. Zwickler, 394 U.S. 103, 109-110, 89 S.Ct. 956, 960-961, 22 L.Ed.2d 113 (1969).
 
 
 15
 Applying these principles here, we conclude that Bordell has not sustained an injury in fact. Had Bordell been prosecuted or otherwise punished for conduct that was proscribed by the September newsletter, he would have suffered a cognizable injury that would be sufficient to confer standing in this case. However, as Bordell concedes, since the September newsletter was circulated, he has been extensively quoted in the local media concerning KAPL's environmental, health, and safety record, and has never been punished or threatened with punishment as a result.[3] Under these circumstances, Bordell has not suffered a direct injury as a result of appellees' conduct.
 
 
 16
 In addition, there is no immediate threat that Bordell will sustain a future injury. In its July newsletter, KAPL stated that the September newsletter should be read in the context of the applicable federal statutes and regulations, and that KAPL's intent was not to discourage proper reporting of health, safety, or environmental issues. Given this policy clarification, and the fact that Bordell has never been punished or threatened with punishment for his past conduct, there is no reason to believe that he will be prosecuted in the future for disclosing information that is not covered by the federal anti-disclosure laws.
 
 
 17
 Despite the fact that he has no reasonable fear of prosecution, Bordell nevertheless maintains that he has been injured because he has felt and continues to feel that he is subject to possible prosecution under the September newsletter. This fear, he argues, has prevented him from blowing the whistle on many other items related to KAPL. Based on the circumstances of this case, this claim is unavailing. While the fact that a plaintiff's speech has actually been chilled can establish an injury in fact, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Laird v. Tatum, 408 U.S. 1, 13-14, 92 S.Ct. 2318, 2325-26, 33 L.Ed.2d 154 (1972). Rather, to establish standing in this manner, a plaintiff must proffer some objective evidence to substantiate his claim that the challenged conduct has deterred him from engaging in protected activity. See Meese v. Keene, 481 U.S. 465, 473-74, 107 S.Ct. 1862, 1867-68, 95 L.Ed.2d 415 (1987) (noting that detailed affidavits that contained polling results and an expert's opinion were sufficient to establish standing). Here, Bordell's assertion that he has been deterred from freely speaking on matters relating to KAPL is wholly unsubstantiated, and is controverted by evidence in the record that he has, in fact, spoken on matters relating to KAPL on numerous occasions. Under these circumstances, Bordell's subjective allegation is insufficient to establish standing in this action.
 
 
 18
 Finally, Bordell claims that even if he has suffered no cognizable injury, he should be allowed to assert the claims of other KAPL employees who allegedly have been injured by the September newsletter, but who are deterred from seeking vindication of their constitutional rights. This claim misconstrues the nature of third-party standing in First Amendment cases. The Supreme Court has established certain non-constitutional prudential limitations on the standing doctrine, one of which is that litigants are normally prohibited from asserting the "legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); see also Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). However, in a narrow class of First Amendment cases, the Supreme Court has relaxed this limitation and allowed litigants to seek redress for violations of the rights of others. See, e.g., Virginia v. American Booksellers Ass'n, 484 U.S. 383, 392-93, 108 S.Ct. 636, 642-43, 98 L.Ed.2d 782 (1988); Secretary of State v. Joseph H. Munson Co., 467 U.S. 947, 956-57, 104 S.Ct. 2839, 2846-47, 81 L.Ed.2d 786 (1984); Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). This slender exception to the prudential limits on standing, however, does not affect the rigid constitutional requirement that plaintiffs must demonstrate an injury in fact to invoke a federal court's jurisdiction. See L. Tribe, American Constitutional Law Sec. 3-19, at 135 n. 2 (2d ed. 1988). Rather, the exception only allows those who have suffered some cognizable injury, but whose conduct is not protected under the First Amendment, to assert the constitutional rights of others. See Munson, 467 U.S. at 958, 104 S.Ct. at 2847 (noting that to invoke third-party standing in First Amendment cases, a plaintiff must satisfy the requirement of injury in fact). Because Bordell has failed to establish an injury in fact, his attempt to assert the rights of other KAPL employees must fail.
 
 
 19
 Bordell's failure to meet the minimum constitutional requirements for standing prevents him from challenging the September newsletter on any basis. As a result, we need not discuss whether the district court correctly determined that his First Amendment claim is moot, or whether his claim under section 619 of the Treasury Act states a claim upon which relief could be granted.
 
 
 20
 Accordingly, we vacate and remand with instructions to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).
 
 
 
 [1]
 A complicated statutory and regulatory scheme, which is not challenged in this suit, protects against public disclosure of classified and sensitive information. For example, Executive Order No. 12356 establishes a system of classifying, declassifying and safeguarding national security information. See 47 Fed.Reg. 14874 (1982). In addition, certain technical data with military application and other information relating to atomic energy defense programs, although not classified, is protected against unauthorized public disclosure. See 10 U.S.C. Sec. 130 (1988); 42 U.S.C. Sec. 2168 (1988)
 
 
 [2]
 The complaint's third claim, that the September newsletter violates 5 U.S.C. Sec. 7211, is not before us on this appeal, and therefore need not be addressed
 
 
 [3]
 As the district court noted, "Bordell [and others] have been quoted more than 30 times in articles in local newspapers regarding environmental, health, safety or union matters at KAPL ... [and] do not ... contend that [they] have been punished in any way for violations of statements in the [September] newsletter." Bordell, 732 F.Supp. at 331 n. 4