UNITED STATES of America and State of Connecticut, as parens patriae, Plaintiffs–Appellees,

v.

Carmen E.F. VAZQUEZ, Defendant–Appellant,

Stanley G. Scott and Bobby J. Riley, Defendants.

Docket No. 97–6140.

United States Court of Appeals, Second Circuit.

Argued March 23, 1998.

Decided May 12, 1998.

Brian Fahling, American Family Association Law Center, Tupelo, MS (Bruce W. Green and Stephen M. Crampton, American Family Association Law Center, Tupelo, MS; Claudia Rich Hojnowski, Plantsville, CT, on the brief), for Defendant–Appellant.

Jennifer C. Jaff, Assistant Attorney General, Hartford, CT (Richard Blumenthal, Attorney General, State of Connecticut; Isabel Katz Pinzler, Acting Ass't Attorney General; John H. Durham, United States Attorney; Sharon E. Jaffe, Assistant U.S. Attorney, Bridgeport, CT, on the brief), for Plaintiffs–Appellees.

Before: FEINBERG and CALABRESI, Circuit Judges, and SEYBERT, District Judge.*

CALABRESI, Circuit Judge:

In a suit arising under the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248 ("FACE"), defendant Carmen E.F. Vazquez appeals from a judgment of the United States District Court for the District of Connecticut (Alan H. Nevas, *Judge*) dismissing her counterclaims for violation of her constitutional rights. In addition, Vazquez challenges the district court's order sealing a portion of the record and preventing her from disseminating certain videotapes. We affirm as to the counterclaims and remand for further proceedings with respect to the videotape order.

## I. FACTS AND PROCEDURAL HISTORY

### A. Claims and Counterclaims

This case began when the United States and the State of Connecticut jointly filed a civil suit, alleging that the defendants (Vazquez, Stanley G. Scott, and Bobby Riley) had violated FACE in the course of conducting anti-abortion protests outside a clinic in Bridgeport, Connecticut. The plaintiffs sought an injunction prohibiting the defendants from physically obstructing patients who wanted to enter the clinic and from otherwise acting in contravention of FACE.

In her answer to the complaint, Vazquez raised several affirmative defenses, most centering on the First Amendment. Specifically, she argued that her protest activities were constitutionally protected speech, that FACE was unconstitutionally vague as applied to her, and that she had been selectively prosecuted for exercising her free speech rights. She further argued that the court lacked subject matter jurisdiction over the plaintiffs' claims because the joint prosecution by the United States and Connecticut violated the dual sovereignty doctrine and the Guarantee Clause, art IV, § 4 of the Constitution.

In addition, Vazquez asserted various counterclaims, alleging that the plaintiffs had violated her rights under 42 U.S.C. § 1983 and the First, Fifth, and Fourteenth Amendments to the Constitution. In her prayer for relief, Vazquez requested: (a) the dismissal

---

* The Honorable Joanna Seybert, United States District Judge for the Eastern District of New York, sitting by designation.

of the plaintiffs' complaint; (b) a finding that the plaintiffs' application of FACE to her actions would be unconstitutional; (c) that the plaintiffs be permanently enjoined from applying FACE to her "speech-related" activities; and (d) attorney's fees pursuant to 42 U.S.C. § 1988(b).

The plaintiffs moved before trial to dismiss the counterclaims pursuant to Federal Rule of Civil Procedure 12 for lack of subject matter jurisdiction, insufficiency of service of process, and failure to state a claim. The magistrate judge to whom the motion had been referred (Holly B. Fitzsimmons, *Magistrate Judge*) recommended dismissal of the counterclaims for lack of jurisdiction and for failure to state a claim, and the district court adopted her recommendation in a pretrial order.

The litigation proceeded; with each of the parties amending their pleadings. After a nine-day bench trial on the plaintiffs' claims, the district court ruled in favor of Vazquez.[1] *See United States v. Scott,* 958 F.Supp. 761, 776–77 (D.Conn.1997). The court expressly ruled that her behavior was protected by the First Amendment and did not violate FACE. It held that the evidence—including videotaped clips of encounters between Vazquez and clinic patients—demonstrated that Vazquez had been engaging in protected speech rather than obstructive conduct. Specifically, the court stated

> [I]n recognition of Vazquez's First Amendment right to leaflet and comment on matters of public concern, a right that receives the utmost protection when exercised on public sidewalks, the court concludes that Vazquez has not violated FACE.

This conclusion is not, nor should it be construed as, a ratification of Vazquez's view or methods of protest. In fact, the court notes that Vazquez has, on occasion, engaged in conduct which bordered on a violation of FACE. If Vazquez, independently or in response to this ruling, should heighten the level of her activity and ren-

der passage by clinic escorts or clients any more difficult than it already is, the court may, in a future proceeding, find that her conduct violates the provisions of FACE.

*Id.* at 777 (citation omitted).

## B. Videotape Order

In the months before this lawsuit was filed, both the plaintiffs and the defendants videotaped encounters between the protestors and clinic visitors. During the course of the litigation, many of these videotapes were exchanged in discovery, and some were introduced at trial.

The plaintiffs were concerned that dissemination of these videotapes to the public could lead to harmful repercussions for the women shown entering the clinic, and therefore requested that the court prevent such public disclosure. In an order affirmed by Judge Nevas, the magistrate judge noted that the plaintiffs' request for an order prohibiting the reproduction and dissemination of "all videotapes in this action" was extremely broad and "could be construed as covering materials not exchanged during the course of discovery in this action." The court therefore entered a "temporary" order that only extended to the videotape material that was exchanged in discovery and that depicted patients entering and exiting the clinic. The order required the parties to seek the court's permission before disseminating these videotapes, and to inform the court of any individuals to whom the videos had already been given. The court then asked for further briefing on the issue of dissemination of the videotapes after trial.

In response to the trial court's request for further briefing on the appropriate scope of a permanent, post-trial order, the plaintiffs filed a supplemental brief. Defendant Vazquez did not. The district court did not subsequently revisit the issue or enter a permanent order. As far as we can discern, the court's original order remains in place.

---

1. With respect to Vazquez's co-defendant Scott, the court found that he had on numerous occasions engaged in physically threatening behavior that was not protected by the First Amendment and therefore issued an injunction. *See Scott,* 958 F.Supp. at 775. As to codefendant Riley, the court concluded that the plaintiffs had not proven by a preponderance of the evidence that he had threatened a clinic escort as alleged in the complaint. *See id.* at 777–78. Scott and Riley are not parties to this appeal.

## II. DISCUSSION

Vazquez appeals, challenging the dismissal of her counterclaims and the order sealing the videos. Before we reach the merits of Vazquez's arguments, we must address a number of procedural arguments advanced by the plaintiffs.

### A. Vazquez's Counterclaims

#### 1. Procedural Bars

*a. Is Vazquez "Aggrieved" by the District Court's Judgment?*

■ The plaintiffs argue that Vazquez received all the relief she wanted when the district court found in her favor on the plaintiffs' FACE claims. They therefore contend that she is not "aggrieved" by the district court's decision and cannot appeal from it. *See, e.g., Spencer v. Casavilla,* 44 F.3d 74, 78 (2d Cir.1994) ("A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it.") (internal quotation marks and citation omitted). Vazquez responds that the lower court's judgment in her favor "simply established that the Governments failed to prove that she violated FACE at discrete points in the past." Such a ruling, she claims, does nothing to protect her against "future schizophrenic and unconstitutional restrictions and applications of FACE by the Governments."

■ Moreover, in her counterclaims, Vazquez had requested that the district court "[p]ermanently enjoin Plaintiffs from applying FACE to [her] speech-related activities...." And she did not get this relief. The district court's opinion, in fact, suggested that

> Vazquez has, on occasion, engaged in conduct which bordered on a violation of FACE. If Vazquez, independently or in response to this ruling, should heighten the level of her activity and render passage by clinic escorts or clients any more difficult than it already is, the court may, in a

future proceeding, find that her conduct violates the provisions of FACE.

*Scott,* 958 F.Supp. at 777. Accordingly, we hold that Vazquez was sufficiently aggrieved by the district court's dismissal of her First Amendment counterclaim to permit her to bring an appeal.[2]

*b. Was Vazquez's Notice of Appeal Defective?*

■ The plaintiffs also argue that Vazquez's notice of appeal was defective. Vazquez's counterclaims were dismissed in a pre-trial order entered on December 24, 1996. In her answer to the plaintiffs' amended complaint, filed in January 1997, she restated all of her counterclaims. Based on its earlier ruling, the district court struck her attempt to resurrect the counterclaims on February 20, 1997. In her notice of appeal, Vazquez stated that she was appealing from this February order. The plaintiffs argue that, in challenging the February 20 ruling, Vazquez cannot attack the underlying December 24 opinion. This argument is without merit. It is clear that Vazquez was trying to appeal the dismissal of her counterclaims, and she appropriately appealed from the final order disposing of them. *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 256 (2d Cir.1995) (notices of appeal are to be construed liberally, taking the parties' intentions into account).

*c. Does Sovereign Immunity Shield the United States from this Suit?*

■ The United States contends that the claims against it should be dismissed because of sovereign immunity. But this case falls into a well-established exception to the requirement of an affirmative waiver of sovereign immunity. No waiver is needed in a suit challenging the enforcement of a statute when "the statute or order conferring power upon the officer to take action in the sovereign's name is claimed to be unconstitutional." *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 690, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Moreover, the

---

**2.** On the other hand, Vazquez is not aggrieved by the district court's failure to rule on her claim that FACE is unconstitutionally vague as applied to her. Since the court ruled, on other grounds, that FACE did not apply to Vazquez's conduct, and since she does not raise a facial vagueness challenge, her vagueness claim is moot.

United States has expressly consented to suit in cases of this sort (those seeking declaratory and injunctive relief) in the Administrative Procedure Act's general waiver of sovereign immunity. See 5 U.S.C. § 702.

Accordingly, sovereign immunity presents no bar to Vazquez's appeal.

### d. Was Blumenthal Properly Served?

■ Richard Blumenthal, the Attorney General of Connecticut and a defendant on the counterclaims, argues that Vazquez's suit must be dismissed—at least against him—because he was not a party to the original suit and Vazquez failed properly to join or to serve him. Significantly, Attorney General Blumenthal does not contend (a) that the court lacks subject matter jurisdiction, personal jurisdiction, or venue over him; (b) that he is otherwise unamenable to service of process; or (c) that he lacked notice of this lawsuit. He simply claims (apparently correctly) that service of process on him was never properly effectuated. The district court never reached this argument because it dismissed the claims against Blumenthal on other grounds. If the court had reached the question, it most likely would have allowed Vazquez to remedy her error by serving Blumenthal at that time. See Fed.R.Civ.P. 4(m) (court may excuse failure timely to serve a summons and complaint on the opposing party for "good cause"). Because the merits of the case against Attorney General Blumenthal are easily resolved, we assume, without deciding, that he is a proper party to this action. See Livingston v. Adirondack Beverage Co., 141 F.3d 434 (2d Cir. 1998).[3]

### e. Did Vazquez Have Standing to Challenge the Governments' Action?

■ The district court adopted the magistrate judge's ruling that Vazquez did not have standing to assert her First Amendment counterclaims and dismissed them for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). The court ruled that Vazquez lacked standing because she did not

allege a sufficiently concrete injury. It reasoned that "there are no factual allegations that Vazquez has actually ceased her participation in pro-life, church-related, or speech activities as a result of the commencement of this civil action" or that "she will suspend these activities in the future." The court noted that exhibits provided by the plaintiffs showed that Vazquez continued her protest activities despite the lawsuit. The court ruled that it had authority to look outside the pleadings, because Rule 12(b)(1) allows the courts to resolve factual disputes concerning the existence of jurisdiction to hear an action. See Antares Aircraft v. Federal Republic of Nigeria, 948 F.2d 90, 96 (2d Cir.1991) (a court may consider evidence outside of the pleadings, such as affidavits, on a motion under Rule 12(b)(1)), vacated on other grounds, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). Finding that Vazquez could not prove that she suffered an injury in fact (an essential element of constitutional standing), the court dismissed her counterclaims.

■ Vazquez argues that the court erred in denying her counterclaims on standing grounds. As the Supreme Court has held, "[t]he party invoking federal jurisdiction bears the burden of establishing [the elements of standing]." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To meet this burden, a plaintiff must show (1) that she suffered an "injury in fact—an invasion of a legally protected interest" that is "concrete and particular," and not merely hypothetical; (2) that there is "a causal connection between the injury and the conduct complained of;" and (3) that it is "likely that the injury will be redressed by a favorable decision." Id. at 560–61, 112 S.Ct. 2130 (internal quotation marks and citations omitted). We believe that Vazquez established standing.

■ We have emphasized that "[t]he fundamental aspect of standing is [its focus] on the party seeking to get his complaint before a federal court and not on the issues he

---

**3.** Since the failure timely to serve a summons and complaint on the opposing party is excusable, this is not an exercise of hypothetical jurisdiction of the sort disapproved of by the Supreme Court in Steel Co. v. Citizens for a Better Environment, —— U.S. ——, ———–——, 118 S.Ct. 1003, 1012–16, 140 L.Ed.2d 210 (1998).

wishes to have adjudicated." *Bordell v. General Elec. Co.,* 922 F.2d 1057, 1060 (2d Cir. 1991) (quoting *Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)) (internal quotation marks omitted.) The aim is to determine "whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (internal quotation marks and citation omitted). The standing issue must therefore be resolved "irrespective of the merits of [the] substantive claims." *Bordell,* 922 F.2d at 1060.

▮▮▮ When standing is challenged on the basis of the pleadings, we "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth,* 422 U.S. at 501, 95 S.Ct. 2197; *accord Pennell v. City of San Jose,* 485 U.S. 1, 7, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988); *Thompson v. County of Franklin,* 15 F.3d 245, 249 (2d Cir.1994) (internal quotation marks and citations omitted). And "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130 (internal quotation marks and citation omitted) (alterations in original). Furthermore, the Supreme Court has stated that

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon *whether the plaintiff is himself an object of the action (or foregone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.*

*Id.* at 561–62, 112 S.Ct. 2130 (emphasis added); *see also Bordell,* 922 F.2d at 1060 ("Had

Bordell been prosecuted or otherwise punished for [his conduct] ... he would have suffered a cognizable injury that would be sufficient to confer standing in this case.").

In the case before us Vazquez was the object of a government action—a lawsuit that sought to enjoin her from engaging in certain protest activities outside abortion clinics. Under the circumstances, the fact that she continued to demonstrate outside the clinic during the pendency of the lawsuit hardly shows that her speech was not "chilled" and that she was, therefore, not injured. Because of the pending suit, she may have felt obliged to tone down her rhetoric, or to refrain from handing out literature at times when she would have liked so to do. Conversely, her continued pamphleteering may have simply been the result of her willingness to risk liability because of a belief in the value of civil disobedience. Accordingly, her persistence in protesting does not mean that she did not suffer a sufficiently concrete injury to challenge the government's action.

In light of the pendency of the government's suit against Vazquez, the district court should not have dismissed Vazquez's counterclaims for lack of standing.

### 2. Merits

▮▮▮ Vazquez claims that the governments' bringing of this lawsuit against her violated her rights under the First, Fifth and Fourteenth Amendments of the United States Constitution. Vazquez asks that we permanently enjoin the United States and the State of Connecticut from applying FACE to her speech-related activities.

▮▮▮ We begin by noting that a party's allegations of injury may be sufficiently concrete to give that party standing, but nonetheless insufficient to justify injunctive relief. And it is clear that Vazquez is not entitled to injunctive relief at the present time, for she has not demonstrated the requisite probability of irreparable harm. *See, e.g., New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1362 (2d Cir.1989) (claimant seeking injunctive relief must demonstrate the absence of an adequate remedy at law and likelihood of irreparable harm if the relief is

not granted). The district court ruled that FACE could not be constitutionally applied to Vazquez's speech activities. In the absence of credible evidence· to contrary, we must assume (as should Vazquez in deciding whether to continue her protests) that the government will abide by that decision and not attempt to chill Vazquez's speech. *Cf. New York Magazine v. Metropolitan Transp. Auth.*, 136 F.3d 123, 127 (2d Cir.1998).

The situation would be different if the facts indicated that an injunction were currently necessary "in order to afford adequate protection of constitutional rights." *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 .(1977). In *Wooley,* the Court allowed an injunction against enforcement of a statute that infringed on the plaintiffs' First Amendment rights because the state had initiated three lawsuits against the plaintiff within a five-week span of time. *See id.* at 712, 97 S.Ct. 1428. But in the case before us, the government has not done any such thing nor is there anything to indicate that it might try to do so in the future.[4] Under the circumstances,· we hold that Vazquez is not entitled to an injunction. ·

 For similar reasons, Vazquez is also not entitled to an injunction based on her counterclaim for selective prosecution. Indeed, this counterclaim is essentially just a more particularized restatement of the First Amendment claim discussed above. Judgment was entered in her favor on all the charges· as to which she contends she was selectively prosecuted. , Accordingly, we read her selective prosecution claim to be simply an additional ground for the injunction that she seeks. But, as we have already pointed out, because Vazquez has shown no likelihood of irreparable injury from future government action, she is not entitled to injunctive relief. And her claim that she was selectively prosecuted in the past, even if valid, does not, without more, alter this fact.[5]

## B. Videotape Order

 Vazquez also challenges the district court's order sealing the record and preventing dissemination of the videotapes exchanged in discovery. The appellees oppose Vazquez's appeal of the videotape order as interlocutory and inappropriate for appellate review. While their frustration with the ripeness of the issue is understandable in light of Vazquez's failure to file the supplemental briefing requested by the district court, the order is properly appealable under the collateral order doctrine. *See In re Ap-*

---

**4.** Likewise, if FACE were unconstitutional on its face, it might be appropriate for us to enjoin its enforcement. But Vazquez has not raised a facial challenge to the statute. And so no such issue is before us. .

**5.** Selective prosecution claims usually come up in litigation as affirmative defenses to prosecution, and the remedy is generally dismissal of the suit that was selectively prosecuted. In the case before us, the court dismissed the claims against Vazquez without ever reaching her defense of selective prosecution. Vazquez requested affirmative injunctive relief, however, and although we hold that Vazquez is not entitled to such relief, we emphasize that, contrary to the magistrate judge's finding with respect to Vazquez's· selective prosecution counterclaims, it is clear that Vazquez has stated a constitutionally cognizable claim that could, in appropriate circumstances, support an injunction or damages.

Vazquez's claim is in essence a First Amendment retaliation action based upon selective prosecution. *Cf. Easton v. Sundram,* 947 F.2d 1011, 1014 (2d Cir.1991) (treating claim for First Amendment retaliation based on selective prosecution as separate from claim for malicious pros-

ecution). The district court erred in holding that such a claim must be grounded in the contention that similarly situated individuals of differing religious or political viewpoints (as opposed to less vocal individuals of the same persuasion) had not been prosecuted. To the contrary, it is possible to base an action for selective prosecution on the government's failure to prosecute individuals of the same viewpoint as the person arrested if the government's motivation was an unconstitutional one—*e.g.,* if the reason for selecting the particular person charged was to chill the exercise of that person's First Amendment rights. For example, in *United States v. Steele,* 461 F.2d 1148 (9th Cir.1972), the court held that the prosecution of a vocal census protestor who "chose to exercise [his] First Amendment rights" when compared with the failure to prosecute others who opposed the census but did not exercise their free speech rights, was unconstitutional. *Id.* at 1151–52. Vazquez alleged that she had been selected for prosecution because she was an especially vocal and successful· anti-abortion counselor, whose First Amendment activities the government wanted to stifle. Nevertheless, for the reasons discussed in the text, we hold that on the facts of *this* case, Vazquez is not entitled to injunctive relief.

*plication of Nat'l Broadcasting Co.*, 635 F.2d 945, 949 n. 2 (2d Cir.1980) (indicating that an order regarding whether videotape evidence should be sealed would be immediately appealable under the collateral order doctrine); *In re Application of the Herald Co.*, 734 F.2d 93, 96 (2d Cir.1984) (discussing the propriety of immediately appealing pre-trial orders of courtroom closure).

Vazquez attacks the order on two grounds. First, she argues that the district court was without power to enter the order because it lacked subject matter jurisdiction over the plaintiffs' claims. Second, Vazquez challenges the order on the merits and claims that it impermissibly infringes on her First Amendment rights.

### 1. Subject Matter Jurisdiction

■ Vazquez contends that the district court lacked subject matter jurisdiction over the plaintiffs' charges against her because the federal government and the State of Connecticut are constitutionally barred from bringing a joint prosecution. If the court lacked jurisdiction to hear the case, she reasons, the court also lacked authority to enter the order sealing the record.

■ Once again, we begin by considering the plaintiffs' assertion that Vazquez cannot challenge the trial court's exercise of subject matter jurisdiction because she prevailed on the merits below. It is true that "if a court grants the ultimate relief a party requested, even though on grounds other than those urged by the prevailing party, that party is generally not 'aggrieved' by the judgment and may not appeal." *Concerned Citizens of Cohocton Valley, Inc. v. New York State Dep't of Envtl. Conservation*, 127 F.3d 201, 204 (2d Cir.1997). This principle is grounded in the requirement that courts adjudicate cases and controversies. When one party has prevailed, and the losing party has not taken an appeal, there is usually no live controversy because the winning party has not suffered the sort of injury necessary to confer standing on appeal. *See id.* at 204–05.

Vazquez, however, is currently subject to a court order with respect to the sealed videotapes. She claims the court did not have authority to enter that order. There can be no doubt that she has identified a present injury that stems from an adverse ruling of the district court. Accordingly, Vazquez is aggrieved and the question of the court's jurisdiction to issue the order concerning the videotapes is properly before us.

■ Vazquez's jurisdictional argument is based on her belief that joint action by the state and federal governments violates principles of federalism that lie at the core of our constitutional system. In support of her argument, Vazquez relies on art. IV, § 4 of the Constitution, which guarantees to the states a republican form of government, as well as on the dual sovereignty doctrine. For the reasons stated below, we reject her claim.[6]

Article IV, § 4 of the Constitution provides that "[t]he United States shall guarantee to every State in this Union a Republican Form of Government." Vazquez argues that the State of Connecticut somehow abdicated its sovereignty when it voluntarily joined with the federal government as a plaintiff in this case, and that this abdication of sovereignty violated the Guarantee Clause.

As the Supreme Court has noted, "the Guarantee Clause has been an infrequent basis for litigation throughout our history." *New York v. United States*, 505 U.S. 144, 184, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). And "[i]n most of the cases in which the Court has been asked to apply the Clause, the Court has found the claims presented to be nonjusticiable under the 'political question' doctrine." *Id.* (citations omitted). While "[m]ore recently, the Court has suggested that perhaps not all claims under the Guarantee Clause present nonjusticiable questions," *id.* at 185, 112 S.Ct. 2408 (citation omitted), the Court has yet to identify any such claims.

Even if we assume that Vazquez's claim is justiciable, we are not persuaded that Con-

---

**6.** While Vazquez does not base her argument on the Tenth Amendment, the cases most relevant to her arguments—*New York v. United States*, 505 U.S. 144, 112 S.Ct. 2408 (1992), and *Printz v.*

*United States*, —— U.S. ——, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997)—raise issues under that amendment. Her claims fail, however, under any nomenclature.

necticut's voluntary decision to join with the federal government as a plaintiff in this civil action can reasonably be said to deprive Connecticut's citizens of a republican form of government. Nothing in any way required the state of Connecticut to join with the federal government in this (or in other) suits under FACE.[7] Connecticut's duly elected officials made the decision that Connecticut should participate in this suit, and if Connecticut's citizens are unhappy with that decision, they are free to elect new officials. *Cf. Printz v. United States,* — U.S. —, 117 S.Ct. 2365, 2377, 138 L.Ed.2d 914 (1997) ("The Constitution ... contemplates that a State's government will represent and remain accountable to its own citizens.").

 There is also no merit to Vazquez's claim that the joint suit somehow violates the dual sovereignty doctrine. The dual sovereignty doctrine allows the state and federal governments to prosecute someone successively for the same criminal acts without violating double jeopardy. The theory is "founded on the common-law conception of crime as an offense against the sovereignty of the government. When a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offenses.'" *Heath v. Alabama,* 474 U.S. 82, 88, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985) (citation omitted); *see also United States v. All Assets of G.P.S. Automotive Corp.,* 66 F.3d 483, 493 (2d Cir. 1995).[8] From this doctrine, which recognizes that the state and federal governments are separate and independent sovereigns, Vazquez extrapolates the principle that the state and federal governments cannot engage in voluntary joint action without surrendering their sovereignty.

 Vazquez's argument fails on any number of grounds. To begin with, it ignores the fact that the instant action is a

civil, not a criminal suit. More fundamentally, Vazquez misunderstands the nature of our federal system. It is, of course, "incontestible that the Constitution established a system of 'dual sovereignty.'" *Printz,* 117 S.Ct. at 2376 (quoting *Gregory v. Ashcroft,* 501 U.S. 452, 457, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991)). Under our system, the states retain "'a residuary and inviolable sovereignty.'" *Id.* (quoting The Federalist No. 39, at 245 (J. Madison) (C. Rossiter, ed.1961)). As a result, the "Federal Government may not *compel* the States to implement, by legislation or executive action, federal regulatory programs." *Id.,* 117 S.Ct. at 2380 (emphasis added); *see also New York,* 505 U.S. at 175, 112 S.Ct. 2408 (federal government may not "'commandeer' state governments into the service of federal regulatory purposes").[9]

But nothing prevents a state government from *voluntarily* deciding to cooperate with the federal government to achieve more efficiently a mutual goal. When a state freely chooses to engage in joint action with the federal government, the state's sovereignty is in no way compromised. *Cf. New York,* 505 U.S. at 168, 112 S.Ct. 2408 ("Where Congress *encourages* state regulation rather than *compelling* it, state governments remain responsive to the local electorate's preferences; state officials remain accountable to the people.") (emphasis added). Accordingly, we find no merit in the notion that the State of Connecticut and the United States of America by becoming co-plaintiffs in this suit, have mutated into one hybrid government.

The propriety of such joint federal and state action is demonstrated "by the extensive mutual assistance the States and Federal Government voluntarily provided one another in the early days of the Republic." *Printz,* 117 S.Ct. at 2372–73. Programs involving this sort of "cooperative federalism"

---

7. In addition, it is interesting to note that, although the federal government could have chosen to preempt state law, FACE actually protects the rights of states to enforce their own state or local laws that may provide the same relief or remedies. *See* 18 U.S.C. § 248(d)(3) & (4).

8. Some have questioned the continued appropriateness of the dual sovereignty doctrine. *See All*

*Assets of G.P.S. Automotive Corp.,* 66 F.3d at 497–99 (Calabresi, *J.,* concurring). The case before us in no way raises that issue, however.

9. State courts can, however, be required to apply federal law. *See Testa v. Katt,* 330 U.S. 386, 393, 67 S.Ct. 810, 91 L.Ed. 967 (1947).

are quite common in modern times as well. *See New York,* 505 U.S. at 167–68, 112 S.Ct. 2408 (citing examples). Indeed, far from being in conflict with the structure of our federal system, voluntary cooperation between the states and the federal government is eminently desirable.

We therefore reject Vazquez's contention that the Constitution prohibits the United States and the State of Connecticut from being co-plaintiffs in this lawsuit, and hold that the district court had subject matter jurisdiction over the plaintiffs' claims, and hence that it had the jurisdictional authority to issue an order sealing the record.

### 2. Merits

■ We decline to reach the merits of Vazquez's challenge to the videotape order at this time. The district court did not enter a definitive order regarding the tapes. It entered an apparently temporary order and suggested further briefing in thirty days. The plaintiffs complied; Vazquez did not. And the court did not take any additional action.

We are mindful of the First Amendment interests at stake, and under other circumstances we might deem it appropriate to evaluate the legality of a temporary order like the one currently in place. Nevertheless, we note that Vazquez had the opportunity to get speedy relief from the district court, and that by not submitting a supplemental brief, she declined to take advantage of that opportunity. Her failure to do so makes it difficult for us to identify, let alone to resolve, the interests at stake.

Accordingly, we remand the matter to the district court so that the parties may make their arguments with respect to the videotapes to that court. In light of the First Amendment issues raised by the competing interests involved, we recommend that the district court resolve the matter and issue a decision with reasonable promptness. Only after such an order is filed would review by this court (if sought by either party) be appropriate.

\* \* \*

The judgment of the district court on Vazquez's counterclaims is affirmed. The case is remanded so that the district court may consider whether it is appropriate to enter a permanent order regarding the dissemination of the videotapes.