Terence TAYLOR, Plaintiff,

v.

WESTOR CAPITAL GROUP, Jonathan
Leinwand, and Richard Bach,
Defendants.

No. 12 Civ. 8032(VM).

United States District Court,
S.D. New York.

April 22, 2013.

Joshua David Brinen, Brinen & Associates, LLC, New York, NY, for Plaintiff.

Simon S. Kogan, Simon Kogan, Esq., Staten Island, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Terence Taylor ("Taylor") filed a first amended complaint (the "First Amended Complaint") against defendants Westor Capital Group ("Westor"), Jonathan Leinwand ("Leinwand"), and Richard Bach ("Bach," and collectively, the "Westor Defendants") asserting violations of Securities Exchange Act Rule 10b–5 ("Rule 10b–5"), and Securities Exchange Act § 20(a) ("Section 20(a)"), as well as common law claims for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, two claims of conversion (one against all three defendants and the other against Westor and Bach), aiding and abetting conversion (against Leinwand), and unjust enrichment (against Westor and Bach). (*See* Dkt. No. 18.) Westor subsequently moved to dismiss the First Amended Complaint. (*See*

1. Except where otherwise noted explicitly, the factual summary below is derived from the First Amended Complaint. (*See* Dkt. No. 1.)

Dkt. No. 23.) As part of his memorandum of law in opposition to Westor's motion to dismiss, Taylor argued that "consideration of the declarations and exhibits [submitted by the Westor Defendants] in support of the motion requires conversion to one for summary judgment." (Dkt. No. 24 at ¶ 24.) In their reply, the Westor Defendants stated "no objection to the Court treating the motion [to dismiss] as a motion for Summary Judgment," and in fact they "urge the Court to do that." (Dkt. No. 25 at 4.) The Court finds conversion unnecessary in this matter because the four corners of Taylor's First Amended Complaint fail to state a federal securities law claim. The Westor Defendants' motion to dismiss is GRANTED.

## I. BACKGROUND [1]

Taylor is an individual residing in New York State. Westor is a brokerage firm located in New York State. Bach is the CEO of Westor, and Leinwand is the General Counsel and Director of Compliance of Westor. Taylor opened a brokerage account (the "Account") at Westor on November 2, 2012 and subsequently deposited various amounts of cash and securities to maintain the Account.

In or about August 2012, Taylor deposited in the Account securities for the company TNI Biotech, Inc. Roughly two months later, on or about October 9, 2012, Taylor requested that $80,000 in cash be transferred to him from the Account, which had a cash value of $105,000 on or about the day before his request. Westor denied the request and informed Taylor that the Account had been frozen. On or about October 10, 2012, Leinwand and Bach engaged in a conference call with Taylor and informed him that the Account would remain frozen. Then, on or about October 11,

The Court will make no further citations to this source unless otherwise specified.

2012, Leinwand informed Taylor that the Account would be unfrozen that afternoon and Taylor reiterated his request for $80,000 from the Account, but Bach separately stated that the Account would *not* be unfrozen that day, and would instead remain frozen pending an investigation into Taylor's trades. On or about the following day, October 12, 2012, Bach informed Taylor that the Account would be unfrozen if Taylor would sell the securities in the Account to Bach for roughly one-half of their market value. Taylor declined to sell the securities, and on or about October 15, 2012, Leinwand reiterated to Taylor's counsel that the Account would remain frozen.

Taylor's repeated attempts to access the Account were triggered by the terms of his probation agreement for an income tax violation, which require him to make monthly restitution payments of at least $2,000, and to support his dependents and meet other family responsibilities. On October 19, 2012, Taylor's counsel requested a wire transfer of $44,114.85 from the Account, which represents the minimum amount needed for Taylor to comply with his probation requirements. Leinwand disputed certain items in this request, but he ultimately informed Taylor's counsel on October 22, 2012 that he expected the transfer to occur that afternoon. Although not mentioned in the First Amended Complaint, the parties agree that Westor subsequently wired the remaining money in the Account to Taylor's counsel. (*See* Dkt. No. 23 at 6; Dkt. No. 24 at ¶¶ 1–6.)

## II. *LEGAL STANDARD*

A. *THE COURT DECLINES TO TREAT DEFENDANT'S MOTION AS SEEKING SUMMARY JUDGMENT*

The Westor Defendants moved to dismiss for improper service of process pursuant to Federal Rule of Civil Procedure 12(b)(5) ("Rule 12(b)(5)") and for failure to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Declarations from Bach, Leinwand, and Simon Kogan (the Westor Defendants' counsel) accompanied the motion (*see* Dkt. Nos. 9, 10, & 13) and primarily seek to bolster two of the Westor Defendants' arguments in favor of dismissal: lack of proper service, and lack of cognizable damages under federal securities laws. Taylor argues that the Court's consideration of these declarations is improper under Rule 12(b)(6), and requires that the Westor Defendants' motion be converted to a motion for summary judgment under Federal Rule of Civil Procedure 56. (*See* Dkt. No. 24 at ¶¶ 21–24.) In their reply, the Westor Defendants "urge" the Court to adopt this course of action. (Dkt. No. 25 at 4.)

The Court declines this invitation because, as will be made clear by the ensuing analysis, the Court's decision to grant the Westor Defendants' motion to dismiss does not rely on any of their submitted declarations, and as such, it is appropriate to proceed under Rule 12(b)(6). *See Philadelphia Parking Auth. v. Federal Ins. Co.*, 385 F.Supp.2d 280, 285 (S.D.N.Y.2005) (finding that conversion of a motion to dismiss into one for summary judgment "unnecessary" where the court "decide[d] this motion solely on the Complaint and without relying on the two extraneous materials presented by Defendant"); *Salichs v. Tortorelli*, No. 01 Civ. 7288, 2004 WL 602784, at *1 (S.D.N.Y. Mar. 29, 2004) ("Generally, mere attachment of affidavits or exhibits to a defendant's papers is not sufficient to require conversion to a motion for summary judgment."); *see also Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir.1999) ("[R]eversal for lack of conversion is not

required unless there is reason to believe that the extrinsic evidence actually affected the district court's decision and thus was not at least implicitly excluded.") Likewise, dismissal under Rule 12(b)(6) renders unnecessary any further consideration of the parties' dispute over service of process under Rule 12(b)(5). *See, e.g., EZ Tag Corp. v. Casio Am., Inc.,* 861 F.Supp.2d 181, 182 (S.D.N.Y.2012) (granting defendants' motion to dismiss under Rule 12(b)(6) and finding it "not necessary to reach the service issue" raised pursuant to Rule 12(b)(5)); *Khan v. State Bank of India,* No. 01 Civ. 1305, 2001 WL 1463783, at *1 n. 1 (S.D.N.Y. Nov. 15, 2001) (dismissing case for lack of jurisdiction and, alternatively, as time-barred and failing to state a claim and finding "no need to resolve the issue of insufficient service of process"); *Hussein v. Waldorf Astoria, Hotel, Rest. & Club Emps. & Bartenders Local # 6,* No. 99 Civ. 1652, 2000 WL 16928, at *1 (S.D.N.Y. Jan. 11, 2000) (granting Rule 12(b)(6) motions and declining to reach issue of insufficient service of process); *see also Jessamy v. City of New Rochelle, N.Y.,* 292 F.Supp.2d 498, 503 n. 4 (S.D.N.Y.2003) (addressing Rule 12(b)(5) motion first by noting that courts "may assume without deciding that the plaintiff properly has served the defendants in a timely manner" and then dismissing the case on the merits); *United States v. Vazquez,* 145 F.3d 74, 80 (2d Cir.1998) (assuming without deciding that service is proper where "the merits of the case against [the party in question] are easily resolved").

## B. *STANDARD FOR DISMISSAL UNDER RULE 12(b)(6)*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct.

1937, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. The task of a court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offering Sec. Litig.,* 383 F.Supp.2d 566, 574 (S.D.N.Y.2005) (*quoting Levitt v. Bear Stearns & Co., Inc.,* 340 F.3d 94, 101 (2d Cir.2003)) (internal quotation marks omitted), *aff'd* Nos. 05–3430–CV, 05–4759–CV, 05–4760–CV, 2006 WL 1423785 (2d Cir. May 19, 2006). A court must accept as true all well-pleaded factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

Taylor's federal securities fraud claims implicate a statutory and regulatory framework involving Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)"), Rule 10b–5, Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") and the pleading standards required by the Private Securities Litigation Reform Act (the "PSLRA"). In pertinent part, Section 10(b) declares it unlawful for any person, directly or indirectly, by the use of any means of interstate commerce, the mails, or national securities exchange:

> to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any

manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

▬▬▬ Rule 10b–5, promulgated by the Securities and Exchange Commission to implement Section 10(b), "more specifically delineates what constitutes a manipulative or deceptive device or contrivance." *Press v. Chemical Inv. Servs. Corp.*, 166 F.3d 529, 534 (2d Cir.1999). Under Rule 10b–5, it is unlawful for any person, directly or indirectly, by the use of any means specified in Section 10(b):

(a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1999). Claims based on conduct violating Rule 10b–5(a) and (c) require "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *In re Alstom SA*, 406 F.Supp.2d 433, 474 (S.D.N.Y.2005). Plaintiffs must specify " 'what manipulative acts were performed, which defendant performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue.' " *Gurfein v. Ameritrade, Inc.*, 411 F.Supp.2d 416, 425 (S.D.N.Y.2006) (*quoting S.E.C. v. U.S. Envtl., Inc.*, 82

F.Supp.2d 237, 240 (S.D.N.Y.2000)). Rule 9(b) further requires that "in all averments of fraud or mistake, the circumstances concerning fraud and mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Finally, when alleging fraudulent acts or schemes to defraud, plaintiffs must plead facts demonstrating a "strong inference" of scienter under the PSLRA. *See In re Alstom SA*, 406 F.Supp.2d at 475.

## III. *DISCUSSION*

The Westor Defendants argue that this case must be dismissed because Taylor fails to state a claim under federal securities law and, as a result, the Court lacks subject matter jurisdiction to consider the remaining state law claims. The Westor Defendants posit two theories as to why the federal securities law claims fail: (1) Taylor fails to allege fraud with the required specificity, and (2) Taylor cannot establish that he suffered any economic loss. The Court agrees that Taylor's federal securities claims fail, although for reasons different from those advanced by the Westor Defendants.

## A. *TAYLOR FAILS TO STATE A CLAIM FOR VIOLATION OF RULE 10b–5*

The First Amended Complaint alleges two violations of Rule 10b–5: First, Taylor alleges that the Westor Defendants employed a scheme to defraud him in violation of Rule 10b–5(a) by refusing to unfreeze the Account—and offering to unfreeze it only if Taylor would sell its contents at a deep discount—knowing that Taylor was in urgent need of cash to pay the Internal Revenue Service. (*See* Dkt. No. 18 at ¶¶ 34–43.) Second, Taylor alleges that the Westor Defendants engaged in an act which would operate as a fraud in violation of Rule 10b–5(c) based on the same facts and also alleging that

the Westor Defendants' "efforts to retain control and possession of Plaintiff's assets were designed to effect and cover illegal short sales of other customers of Defendant Westor Capital Group, Inc.," and that these actions "knowingly prevent[ed] Plaintiff from executing sales and transfers of stock in order to allow certain customers to execute and cover illegal short sales with impunity." (*Id.* at ¶¶ 46–47.) The Westor Defendants argue that both claims fail for lack of specificity, *see* Dkt. No. 23 at 9–10, while Taylor in turn argues that the pleading is satisfactory by quoting from the First Amended Complaint and highlighting case law on the element of scienter. (*See* Dkt. No. 24 at ¶¶ 42–48.)

■ However, the Court need not reach the element of scienter, let alone the Westor Defendants' second argument regarding loss causation, because Taylor's allegations founder on a more immediate reef. The plain language of Rule 10b–5 mandates that the proscribed schemes or acts be done "in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5. Further, the Second Circuit has long recognized that "Rule [10b–5] impose[s] liability for a proscribed act in connection with the purchase or sale of a security; it is not sufficient to allege that a defendant has committed a proscribed act in a transaction of which the pledge of a security is a part." *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir.1984). The First Amended Complaint fails to make this connection.

■ In this case, Taylor's allegations encompass behavior by the Westor Defendants that post-dates his decision to purchase any of the securities in the Account; notably, he does not allege that the Westor Defendants' behavior impacted any of his purchasing decisions. The crux of the alleged fraud appears to be that the Westor Defendants coveted the contents of the Account and thus froze it to create enough financial pressure on Taylor to sell at a steep discount. But even if true, this conduct does not amount to a federal securities claim. The case of *Pross v. Katz*, 784 F.2d 455 (2d Cir.1986) helps illustrate why. The plaintiff in that case alleged that the defendant—plaintiff's investment manager—engaged in a secret plan to divest plaintiff of his holdings. In dismissing the § 10(b) claim, the Second Circuit noted that "[t]he steps to be taken to effectuate the fraud are not integral to the purchase and sale of the securities in question and are to occur only well after the securities transaction has been completed." *Id.* at 459.

Courts in this district have routinely dismissed Section 10(b) and Rule 10b–5 claims where the allegations are similarly unmoored. *See, e.g., Crummere v. Smith Barney, Harris Upham & Co.*, 624 F.Supp. 751, 754 (S.D.N.Y.1985) (dismissing Rule 10b–5 claim against brokerage firm representative alleged to have diverted plaintiff's funds was, in effect, "for misappropriation or conversion of funds" because "[w]hile the funds accrued from the purchase, sale or trading of securities, the conversion or fraud occurred after the trades had taken place, and had 'nothing whatever to do with the decision of plaintiff to make the purchase'") (*quoting Meisel v. North Jersey Trust Co.*, 218 F.Supp. 274, 278 (S.D.N.Y.1963)); *Bissell v. Merrill Lynch & Co.*, 937 F.Supp. 237, 243 (S.D.N.Y.1996) (dismissing Rule 10b–5 claim against brokerage firm alleged to have misused customer assets where there was "no allegation that [defendant's] allegedly fraudulent practices related in any way to the value of the securities that plaintiff sold short or the consideration he received"); *Miller v. Smith Barney, Har-*

*ris Upham & Co.*, No. 84 Civ. 4307, 1986 WL 2762, at *4 (S.D.N.Y. Feb. 27, 1986).

In essence, courts have drawn a line separating fraud claims that impact the fundamental valuation of the securities at issue, and the operation of securities markets, as distinguished from those that do not. The former properly fall within the ambit of Section 10(b) and Rule 10b–5 because the purpose of these provisions is "to protect the investing public and to secure fair dealing in the securities markets by promoting full disclosure of inside information so that an informed judgment can be made by all investors who trade in such markets." *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228, 235 (2d Cir.1974); *see also Manufacturers Hanover Trust Co. v. Smith Barney, Harris Upham & Co.*, 770 F.Supp. 176, 181 (S.D.N.Y.1991) ("Rule 10b–5 is designed to protect market transactions, not trust relationships.")

While it is true that the federal law in this area must be read "not technically and restrictively, but flexibly to effectuate its remedial purposes," *Shapiro*, 495 F.2d at 235 (*quoting Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972)), Taylor's claims nonetheless fail to state a claim under Rule 10b–5 because, as with the examples cited above, they implicate none of the same concerns about securities pricing, information, or the operation of the markets. Put another way, the fraud alleged here—that the Westor Defendants unfairly froze the Account and made Taylor an unfavorable offer as to its contents to take advantage of his financial constraints—"pertains not to the sale of the securities or the value of the securities themselves, but to the terms of the relationship between the broker and the customer." *Levitin v. PaineWebber, Inc.*, 933 F.Supp. 325, 329 (S.D.N.Y.1996) (dismiss-

ing Rule 10b–5 claim), *aff'd on other grounds,* 159 F.3d 698 (2d Cir.1998); *see also Chase Manhattan Bank, N.A. v. Fidata Corp.*, 700 F.Supp. 1252, 1260 (S.D.N.Y.1988) ("[C]ourts have held that no claim for relief is stated under 10b–5 by an allegation that the defendant failed to disclose its intent to breach fiduciary duties under state law, to convert the plaintiff's property, or to sell the securities at an unfair price, even if that disclosure would be material."); *Korff v. Bank Julius Baer & Co., Ltd.,* No. 88 Civ. 4569, 1990 WL 67771, at *3 (S.D.N.Y. May 14, 1990) ("Although plaintiffs' allegations may provide the basis for a claim of breach of fiduciary duty or breach of contract, they fall far short of providing the basis for a federal claim under § 10(b) or Rule 10b–5.").

Taylor's threadbare allegations (only contained in the Rule 10b–5(c) cause of action) that the Westor Defendants were motivated by a desire to effect and cover illegal short sales made by other customers do not save his claims. To begin, it is not at all clear from the First Amended Complaint that this short sale scheme had any "connection with" Taylor's purchase or sale of securities in the Account, because the First Amended Complaint gives no indication what (if any) effect this scheme had on the pricing of securities or the operations of securities markets. Indeed, Taylor's claim does not appear to be that the Westor Defendants' behavior negatively impacted the value of the Account, for he has alleged no facts demonstrating that result. Rather, Taylor alleges that his damages stem from the freezing of the Account itself. Thus, the mention of unrelated illegal short sale trading here serves as no more than diaphanous window dressing.

Moreover, even if Taylor could connect this scheme to his own purchase of securi-

ties, his allegations regarding short sales are far too unspecific to survive dismissal. The First Amended Complaint contains virtually no details about this alleged scheme: it is impossible to tell what manipulative acts were performed, who performed them, when they were performed, what securities were involved, and what effect this scheme had on the market for those securities. Taylor's allegations regarding short sales thus meet none of the required elements to state a claim for federal securities fraud in this jurisdiction, and so they cannot prevent dismissal in this case. *See Gurfein,* 411 F.Supp.2d at 425 (listing requirements for claims under Rule 10b–5(a) and (c)).

## B. *TAYLOR'S REMAINING CLAIMS ARE DISMISSED*

■ The dismissal of Taylor's Rule 10b–5 claims results in the dismissal of the remaining claims as well. First, Taylor's claim of a Section 20(a) for control person liability cannot stand without a predicate violation. *See Bui v. Industrial Enters. of Am., Inc.,* 594 F.Supp.2d 364, 372 (S.D.N.Y.2009) ("To the extent that Plaintiffs have failed to sufficiently allege predicate violations of § 10(b), the control person claims under § 20(a) of the Exchange Act also fail."). Second, as the Court has dismissed all federal claims over which it has original jurisdiction, it declines exercise supplemental jurisdiction over Taylor's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Production Res. Grp., L.L.C. v. Stonebridge Partners Equity Fund, L.P.,* 6 F.Supp.2d 236, 242 (S.D.N.Y.1998) (dismissing Rule 10b–5 claim and declining to exercise supplemental jurisdiction over remaining state law claims).

## IV. *ORDER*

For the reasons stated above, it is hereby

ORDERED that the motion (Dkt. No. 19) of defendants Westor Capital Group, Jonathan Leinwand, and Richard Bach to dismiss the first amended complaint of plaintiff Terence Taylor, is GRANTED.

The Clerk of Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**