**AMERICAN CHARITIES FOR REA-SONABLE FUNDRAISING REG-ULATION, INC., et al.**

v.

**Mark SHIFFRIN, et al.**

**No. 3:98CV1050JBA.**

United States District Court,
D. Connecticut.

March 31, 1999.

Richard C. Robinson, Sorokin, Sorokin, Gross, Hyde & Williams, Hartford, CT, Clifford Perlman, Edward N. Mazlish, Perlman & Perlman, New York, NY, for American Charities for Reasonable Fundraising Regulation Inc., Bill of Rights Foundation, Inc., plaintiffs.

David Edward Ormstedt, Attorney General's Office, Holly Jean Bray, Attorney General's Office, Hartford, CT, for Consumer Protection, Connecticut, Mark Shiffrin, Comm., State of Connecticut, Richard Blumenthal, Atty. General, defendants.

### RULING ON MOTION TO DISMISS [DOC. # 20] AND MOTION FOR PRELIMINARY INJUNCTION [DOC. # 3]

ARTERTON, District Judge.

Plaintiff American Charities is a membership organization whose members consist of numerous charities, nonprofit "umbrella" organizations, and other fundraising organizations. Plaintiff Bill of Rights Foundation ("BRF"), which joined this action as a co-plaintiff by way of the Amended Complaint, is a nonprofit organization that alleges it has been chilled from commencing any fundraising activities in Connecticut out of fear of inadvertent violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen.Stat. § 42–110a et seq., and the state sweepstakes law, Conn. Gen.Stat. § 42–295 et seq. The plaintiffs have moved for a pre-enforcement preliminary injunction to enjoin the State of Connecticut from using these two statutes to regulate charitable fundraising. The plaintiffs also move for a declaratory judgment under 28 U.S.C. § 2201 that these statutes are unconstitutionally vague on their face and are otherwise unconstitutionally "chilling" of plaintiffs' First Amendment rights.

Defendants Mark Shiffrin, Commissioner of the Connecticut Department of Consumer Protection, and Richard Blumenthal, Attorney General of the State of Connecticut, have moved to dismiss the case on the grounds that 1) plaintiff American Charities lacks standing under § 1983 to bring this action on behalf of its member organizations, 2) plaintiff BRF lacks standing and fails to state a cause of action for a violation of its First Amendment rights, 3) the Court should abstain under the *Younger* abstention doctrine, 4) the Court should abstain under the *Rooker–Feldman* doctrine, 5) the Court should abstain under the *Pullman* doctrine.

The Court concludes that plaintiff American Charities lacks standing to bring suit under 42 U.S.C. § 1983; plaintiff BRF has failed to state a cognizable allegation of First Amendment chill sufficient to confer standing; federal abstention is not appropriate; American Charities' amendment of the complaint to add a cause of action under the Declaratory Judgment Act was proper.

### Background

The plaintiffs bring this case pursuant to § 1983 and the Declaratory Judgment Act, arguing that in using CUTPA, Conn. Gen. Stat. § 42–110a et seq., and the "sweepstakes law," Conn. Gen.Stat. § 42–295 et

seq., to regulate charitable solicitations, Connecticut has infringed the plaintiffs' First Amendment rights by directly impairing their ability to communicate with the public because of plaintiffs' fear of inadvertent statutory violations.

CUTPA provides that

(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

(b) It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.

(c) The commissioner may, in accordance with chapter 54, establish by regulation acts, practices or methods which shall be deemed to be unfair or deceptive in violation of subsection (a) of this section. Such regulations shall not be inconsistent with the rules, regulations and decisions of the federal trade commission and the federal courts in interpreting the provisions of the Federal Trade Commission Act.

(d) it is the intention of the legislature that this chapter be remedial and be so construed.

Conn Gen.Stat. § 42–110b. In Count One of their complaint, the plaintiffs assert that this statute is overly broad and vague, and thus improperly infringes their First Amendment rights by the resulting uncertainty as to what conduct is or is not statutorily prohibited.

The sweepstakes law and its implementing administrative regulations, Conn. Agencies Regs. § 42–110b–23, proscribe certain activities associated with sweepstakes promotions, and require certain disclosures in connection with such promotions, such as a statement of the odds of winning, and a statement of the dollar value of any prize being offered. Conn. Gen.Stat. § 42–295 et seq., the "sweepstakes law," provides that:

As used in sections 42–295 to 42–300, inclusive:

(1) "Advertise" means the use of the media, mail, computer, telephone or personal contact to offer to a specifically named person the opportunity to participate in a sweepstakes or a game of skill and such offer represents that such person has been awarded or will be awarded a prize;

(2) "Consumer product" means any article used primarily for personal, family or household purposes;

(3) "Person" means an individual, corporation, association, partnership or any other entity;

(4) "Prize" includes, but is not limited to, an award, gift certificate, travel coupon or anything else of value regardless of whether there are any conditions or restrictions attached to the receipt of the prize that is separate and distinct from the goods, services or property promoted by the sponsor;

(5) "Promoter" means a person conducting a sweepstakes;

(6) "Simulated check" means a document which looks similar to a check but is not currency or a check, draft, note, bond or other negotiable instrument;

(7) "Sponsor" means a person on whose behalf the sweepstakes is being conducted to promote or advertise goods or services of that person;

(8) "Sweepstakes" means a legal contest or game where a prize is distributed by lot or by chance and does not require a permit or license to operate in the state;

(9) "Verifiable retail value" means: (A) A price at which a substantial number of the prizes have sold at retail in the local market no earlier than one year prior to the advertisement of the sweepstakes by a person other than the promoter or sponsor; (B) if the prize is

not available for retail sale in the local market, the retail value of an item substantially similar to the prize in quality, quantity, grade and utility; or (C) if the value cannot be established under subparagraph (A) or (B) of this subdivision, no more than three times the cost of the prize to the promoter or sponsor; and

(10) "800 number" means a prefixed telephone number for which no charge is assessed.

Sweepstakes. Restrictions on advertisements

No person may advertise a sweepstakes if there is any condition or restriction attached to the receipt of any prize a person wins in the sweepstakes, unless the condition or restriction to claim the prize is through any method which does not require any purchase, payment of a fee or any other consideration, such as (1) a telephone call in the participant's extended local calling area, (2) a telephone call to an 800 number, or (3) a visit to a retail establishment in the local marketing area which does not require the participant to attend a sales presentation. For purposes of this section, completing publicity or liability releases, eligibility affidavits or assuming liability for federal, state or local taxes, federal, state or local licenses or registration fees or other similar costs does not constitute a condition or restriction.

Required disclosures

(a) A person advertising a sweepstakes in this state shall disclose in immediate proximity to and in at least the same size and face type as the description of each prize in the advertisements: (1) The verifiable retail value of such prize; (2) if the element of chance is involved, the odds of winning such prize, expressed in arabic numerals as a fraction or ratio or, if the odds depend upon the number of entries received, a statement that the odds depend upon the number of entries received; and (3) whether the receipt of the prize is restricted or qualified in any way, includ-

ing, but not limited to, travel dates or times, classes of travel or airlines, provided the person advertising the sweepstakes may include a statement substantially similar to the following: "major restrictions may apply to the use, availability or receipt of this prize" and include the specific rules or restrictions in a separate statement in the advertisement.

(b) A person advertising a sweepstakes in this state shall clearly and conspicuously disclose the following information: (1) The name and address of the promoter and the sponsor of the sweepstakes; and (2) any conditions or restrictions on the eligibility to receive the prize, including, but not limited to, age, residence, employment or marital status.

Games of skill. Restriction on advertisement

No person shall advertise a game of skill where a prize with a fair market value of over two hundred dollars is awarded to a winner if participants are required to pay an entry or judging fee or are solicited to purchase a good or service designed to assist the participant in winning the game of skill provided the participant may be required to purchase a consumer product or service if the game of skill is designed primarily to promote such product or service.

Simulated checks. Restricted use

No person may distribute or otherwise transfer a simulated check in connection with a sweepstakes in this state unless the simulated check clearly and conspicuously bears the phrase "THIS IS NOT A CHECK" diagonally printed on the face of the check.

Unfair trade practice

A violation of sections 42–295 to 42–299, inclusive, shall be deemed an unfair or deceptive trade practice under subsection (a) of section 42–110b.

The plaintiffs charge that this statute is overly broad and vague, in that it prohibits

protected speech and certain terms are undefined, and has chilled the exercise of free speech by the plaintiffs in this state in violation of the Supreme Court's holdings in *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984); and *Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc.,* 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988).

In *Schaumburg,* a municipal ordinance prohibiting the solicitation of contributions by charitable organizations that do not use at least 75% of their receipts for "charitable purposes" was held to be unconstitutionally overbroad. The Supreme Court determined first that charitable solicitations are so intertwined with speech that they are entitled to the protections of the First Amendment. Reflecting the Village's assertion that the 75% requirement was intimately related to substantial governmental interests "in protecting the public from fraud, crime and undue annoyance," 444 U.S. at 637, 100 S.Ct. 826, the Supreme Court framed the issue as whether the Village of Schaumburg had exercised its power to regulate solicitation in such a manner as not unduly to intrude upon the rights of free speech. While concluding that these interests are substantial, the Supreme Court found that they are only peripherally addressed by the 75% requirement and could be sufficiently served by measures less intrusive of First Amendment protections, such as laws to punish fraudulent conduct directly. Addressing the Village's additional argument that the 75% requirement was necessary to protect public safety and residential privacy, the Court found that the ordinance was related to the protection of privacy in only the most indirect of ways.

Four years later, the Supreme Court revisited the issue of regulation of charitable speech in *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). The Joseph H. Munson Company, a for-profit fundraiser, challenged a Maryland state statute that prohibited any charitable organization, in connection with any fundraising activity, from paying or agreeing to pay as expenses more than 25% of the amount raised. The statute included a provision that a charity could obtain a waiver if the 25% limitation would effectively prevent the charitable organization from raising contributions. In striking down the statute on its face, the Court explained that the flaw in the statute was not simply that it includes within its sweep some impermissible applications, but that in all its applications it operates on a fundamentally mistaken premise that high solicitation costs are an accurate measure of fraud, and the waiver provision did not remedy this fundamental defect.

The last case in this trio, *Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc.,* 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988), involved the North Carolina Charitable Solicitations Act, which governed the solicitation of charitable contributions by professional fundraisers. The Supreme Court found unconstitutional those aspects of the statute that: regulated charitable fundraising by establishing a prima facie "reasonable fee" that a professional fundraiser may charge; required professional fundraisers to disclose to potential donors the gross percentage of revenues retained in prior charitable solicitations; and required professional fundraisers to obtain a license before soliciting. Relying on *Schaumburg* and *Munson,* the Court explained that percentage-based bright lines are unduly burdensome and not narrowly-tailored to the State's interest in preventing fraud, and that the state's interest in requiring delineation to consumers of the percentage use of their contribution lacked the great weight ascribed to it by the state. Finally, the Supreme Court considered the licensing requirement, and found that it carried with it the power to directly and substan-

tially affect the speech expressed by the fundraisers.

## Discussion

### Standing of Bill of Rights Foundation

■ "The doctrine of standing, though riddled with ambiguities, is grounded in certain basic constitutional principles. As the Supreme Court has noted, '[t]he fundamental aspect of standing is that it focuses on the party seeking to get [its] complaint before a federal court and not on the issues [it] wishes to have adjudicated.'" *Bordell v. General Electric Co.*, 922 F.2d 1057, 1059–60 (2d Cir.1991) (quoting *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)). Article III therefore requires the district court, quite apart from any consideration of the merits of the substantive claims, to determine initially whether plaintiff has standing.

■ "To bring a cause of action in federal court requires that plaintiffs establish at an irreducible minimum an injury in fact; that is, there must be some 'threatened or actual injury resulting from the putatively illegal action....'" *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 392, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988) (quoting *Warth v. Seldin*, 422 U.S. at 499, 95 S.Ct. 2197). While courts have been unable to define "injury in fact" with detailed precision, the Supreme Court has explained that "Abstract injury is not enough.... [T]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (quotations omitted).

■ The defendants assert that plaintiff BRF lacks standing and fails to state a claim because BRF has engaged in no conduct whatsoever that might conceivably come within the purview of the challenged statute and has nothing more than amorphous intentions to engage in solicitation activity, it lacks any injury or threat of injury sufficient to confer standing. The complaint alleges that:

One of ACFRFR's [American Charities'] members that has refrained from disseminating its message in the State of Connecticut is co-Plaintiff BRF. BRF plans to solicit funds in the State of Connecticut, but has refrained from doing so due to a genuine fear of prosecution under CUTPA.

BRF is aware of the Defendants' use of CUTPA to regulate the charitable speech of former ACFRFR members and is fearful that the Defendants will label as unfair trade practices public education messages it sends into Connecticut.

Moreover, BRF is unwilling to subject the speech it makes to the scrutiny of the "cigarette rule," which prohibits speech on the basis that is inter alia, "unfair," "immoral," and "unethical." Moreover, BRF is particularly fearful of the Defendants' power to punish under the "cigarette rule" speech that had not been considered unlawful at the time it was made.

As a result of its fear of unconstitutional prosecutions by the Defendants, BRF has refrained from exercising its constitutional right to speak in the State of Connecticut. Rather than attempting to vindicate its rights defending itself from prosecution at the hands of the Defendants, BRF has instead joined Plaintiff ACFRFR in the instant action seeking declaratory and injunctive relief against the Defendants.

(Am. Compl. at ¶¶ 25–28).

Both sides refer the Court to deposition testimony to aid in determining what exact injury BRF may have. In *United States v. Vazquez*, 145 F.3d 74 (2d Cir.1998), the Second Circuit reversed the conclusion that the counterclaim plaintiff lacked standing for its First Amendment counterclaims because the district court looked beyond the pleadings for its basis that a sufficiently concrete injury had not been alleged. The district court had concluded "that it had authority to look outside the

pleadings, because Rule 12(b)(1) allows the courts to resolve factual disputes concerning the existence of jurisdiction to hear an action." 145 F.3d at 80. In reversing, the circuit explained that "when standing is challenged on the basis of the pleadings, we 'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party,'" such that "on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 81 (citation omitted). This principle was previously articulated by the Supreme Court in *Warth v. Seldin:* "[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). However, "[a]t the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Id.*

The depositions in this case indicate that the BRF was incorporated in Washington, D.C. as a non-profit corporation in 1997, but it is not registered in any state to engage in fundraising activities, nor has it ever conducted any fundraising in any state. (Defs.' Ex. C at 16–17). While BRF has "plans" to engage in fundraising, no commencement date has been set, no specific strategies for such activities are in place, and BRF has not yet obtained any mailing or phone lists of people who might be the focus of its efforts. (*Id.* at 17–20). According to the President of BRF, these plans are still in the "preliminary, look-see" stage. (Pls.' Ex. C at 29).

At one extreme of the Supreme Court's jurisprudence on standing and injury alleged is *Laird v. Tatum,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), in which the plaintiffs alleged that their First Amendment rights were being chilled by the existence of military surveillance of lawful and peaceful civilian political activity. In finding that the plaintiffs lacked standing to pursue their claims, the Supreme Court distinguished previous cases by explaining that:

> In none of these cases, however, did the chilling effect arise merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual. Rather, in each of these cases, the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either *presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging.*

*Id.* at 11, 92 S.Ct. 2318 (emphasis added). The Court further reflected that "allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm and 'the federal courts established pursuant to Article III of the Constitution do not render advisory opinions.'" *Id.* at 12, 92 S.Ct. 2318. Sixteen years later, the Supreme Court distinguished the *Laird* holding in *Virginia v. Am. Booksellers Ass'n,* 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782, in which a booksellers' association brought a pre-enforcement action to challenge a Virginia law aimed at preventing sale of sexually-explicit material to children. The Court found that the requirement of threatened or actual injury "is met here, as the law is aimed directly at plaintiffs, who, if their interpretation of the statute is correct, will have to take significant and costly compliance measures or risk criminal prosecution." *Id.* at 392, 108 S.Ct. 636. Inasmuch as the state had not suggested that the law would not be enforced, and the Supreme Court had no reason to assume otherwise,

the pre-enforcement posture of the action was of no consequence to the Supreme Court. However, in contrast to the instant action, it was not disputed that the booksellers at issue were currently engaged in activity that would bring them within the purview of the challenged statute in that as much as half of the booksellers' inventory was potentially subject to the new Virginia statute. *See* 484 U.S. at 390–91, 108 S.Ct. 636.

Here, BRF has alleged that the existence of the statute has directly chilled it from even commencing or planning any solicitation/speaking for fear of prosecution. "BRF *plans* to solicit funds in the State of Connecticut, but has refrained from doing so due to a genuine fear of prosecution under CUTPA." (Am. Compl. at 25). Defendants have, in the past, prosecuted charities under this statute, and make no representations that they will not prosecute in the future. While BRF alleges that its reluctance to solicit funds in Connecticut, or even to commence preliminary preparation, is the "chill" resulting from the challenged statute, its complaint contains no allegation that it is currently in a legal position to engage in such activities as a registered charitable solicitor in Connecticut, as required by Conn. Gen.Stat. § 21a–190b,[1] a status that BRF confirmed at oral argument and in the deposition of its president. (*See* Pls.' Ex. C, Defs.' Ex. C).

In essence, BRF has launched a pre-enforcement challenge to a statute without at the same time bringing itself within the statute's enforcement powers, i.e., before it exposes itself to possible prosecution for acts it may take in the future, it seeks federal court protection. In contrast with the plaintiffs in *American Booksellers* who were actively engaged in the activity that was subject to future prosecution, BRF has remained in an inactive position of safety in which it has done nothing that the state can prosecute. As a result, BRF can show no threatened or actual threat of illegal prosecution. In order to establish standing based on an impermissible chill, "a plaintiff must proffer some objective evidence to substantiate [its] claim that the challenged [statute] has deterred [it] from engaging in protected activity." *Bordell,* 922 F.2d at 1060–61. BRF's allegations of "subjective chill of First Amendment rights are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Latino Officers Ass'n v. Safir,* 170 F.3d 167, 170 (2d Cir.1999) (citing *Laird,* 408 U.S. at 13–14, 92 S.Ct. 2318). Moreover, in order to have standing, BRF must show that there has been "an invasion of a legally protected interest," *id.* (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)), which BRF has failed to do in the absence of an allegation that it has complied with the legal prerequisites that would enable it to conduct fundraising activities in the state of Connecticut.

The rule of *Laird* is that although allegations of First Amendment chill can be cognizable, there is an outer limit beyond which such speculation is too remote. In *Laird,* the Court observed that in each case where a cognizable injury had been recognized, "the complainant was either *presently or prospectively* subject to the regulations, proscriptions, or compulsions" being challenged. 408 U.S. at 11, 92 S.Ct. 2318 (emphasis added). BRF is currently not even prospectively subject to the challenged statutes because it is not legally capable of conducting fundraising in the state. Further, apart from actual solicitation, nothing in the statutes at issue prohibit preparation activities and thus plaintiffs' claimed unlawful chill on commencing any planning is no surrogate for the requisite cognizable injury. Thus, BRF has failed in its complaint to establish that it is an organization that could be subject to the statutes it challenges, or that the alleged chill is anything more than speculative or subjective.

---

1. Section 21a–190b is a statutory requirement not challenged here.

As the complaint and supporting depositions make clear, BRF is not now potentially subject to any statutory proscriptions such that there is a case or controversy as required by the Constitution. Accordingly, any chill it alleges is too remote and speculative and defendants' Motion to Dismiss is GRANTED as to plaintiff Bill of Rights Foundation.

***Standing of American Charities to Bring Suit Under § 1983***

■ The defendants also maintain that plaintiff American Charities has no standing to bring suit under 42 U.S.C. § 1983, relying on *League of Women Voters v. Nassau County Board of Supervisors*, 737 F.2d 155 (2d Cir.1984). There, the plaintiff League of Women Voters along with five of their members brought a § 1983 action challenging the voting system of the Nassau County Board of Supervisors. The Second Circuit found that the League lacked standing to assert the rights of its members. "This Circuit has restricted organizational standing under § 1983 by interpreting the rights it secures to be personal to those purportedly injured." *Id.* at 160 (*citing Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir.1973); *Albany Welfare Rights Org. v. Wyman*, 493 F.2d 1319 (2d Cir.1974)). At issue in *Aguayo* was whether welfare rights organizations had standing to sue under § 1983. The Second Circuit explained that "neither [the language of the statute] nor the history … suggests that an organization may sue under the Civil Rights Act for the violation of rights of members." *Id.* at 1099. The circuit, however, specifically distinguished the holding in *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), and its progeny as conferring standing on an organization asserting the rights of its members "in the context of a claim of abridgment of the constitutional *right of association.*" *Aguayo*, 473 F.2d at 1100 (emphasis added) (citations omitted). The circuit further explained that the Supreme Court's language in *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) applied only to judicial review of "the action of *federal officers*, and not as broadening the standing of organizations as plaintiffs under the Civil Rights Act." *Aguayo*, 473 F.2d at 1100 (emphasis added). *See also Roxbury Taxpayers Alliance v. Delaware County Board of Supervisors*, 80 F.3d 42, 45 (2d Cir.1996) (citing *League of Women Voters* as standing for the proposition that " § 1983 action[s][are] available only to those who can assert infringement of a 'personal' constitutional right").

Plaintiff American Charities asserts that it has standing under *Hunt v. Washington Apple Adver. Comm'n.*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), which set out a three-part test to establish organizational standing: (1) at least one member of the organization must have standing, (2) the suit must be consistent with the organization's purpose, and (3) individual participation by members is not required. The defendants argue that *Hunt* is inapplicable in that, like *Sierra Club v. Morton*, it was not brought as a § 1983 action against state officials.[2] In light of the Second Circuit's analysis of organizational standing under § 1983 in *League of Women Voters*, the three-part test of *Hunt*, like the holding in *Sierra Club*, must be limited to the issue *sub judice*, both of which leave unaddressed organization standing under § 1983.

American Charities alternatively asserts that it has standing under the exception identified by the Second Circuit in *Albany Welfare Rights Org. v. Wyman*, 493 F.2d 1319 (2d Cir.1974), for situations in which

---

**2.** Actually, *Hunt* was originally brought under both § 1983 and the Declaratory Judgment Act, but the district court found jurisdiction under 28 U.S.C. § 1331 (federal question), and thus decided that it "need not consider whether there is also jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3)." *Washington State Apple Advert. Comm'n v. Holshouser*, 408 F.Supp. 857, 858 n. 4 (E.D.N.C.1976). The Supreme Court did not refer to § 1983 in its decision.

the plaintiff organization asserts a claim of abridgement of the constitutional right of association. American Charities explains that it is asserting the "First Amendment right of its members to speak and associate with residents of the State of Connecticut," (Pls.' Mem. in Opp. at 7), and thus falls into the exception to the rule identified in *Albany Welfare Rights*. The cases applying this exception are distinguishable as organizational assertions of both the *members'* rights to associate and the *right of the organization* itself to associate. In *Albany Welfare Rights*, for example, at issue was the welfare organization's ability to recruit and communicate with potential new members. Similarly, in *Aguayo v. Richardson*, the Second Circuit applies this exception to situations in which there would be an adverse effect "on *both* the association and the members." 473 F.2d at 1100 (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459–460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)) (emphasis added). American Charities' articulation of its "right to associate" claim in no way involves the associational interests of the organization itself and thus it lacks standing under § 1983 to sue on behalf of its members under its current description of its association claim. Defendants' Motion to Dismiss is GRANTED as to American Charities' § 1983 cause of action, leaving only American Charities' request for declaratory relief under the Declaratory Judgment Act.

### Amendment of Complaint and the Declaratory Judgment Act

The original complaint in this matter contained only one plaintiff, American Charities, and one cause of action under § 1983. The plaintiff filed an amended complaint twenty days later, "as a matter of course" under Fed.R.Civ.P. 15(a) ("A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served."). After the complaint was filed and accepted by the Clerk's Office on this basis, the defendants submitted an "objection" to the amended complaint, incorporating some of their arguments in their motion to dismiss, particularly their argument that the amended complaint should now be rejected by the Court because the plaintiffs cannot "create jurisdiction retroactively" by adding a second count for declaratory relief under 28 U.S.C. § 2201.

According to the defendants, it is a "fundamental principle of procedure, uniformly adhered to by the federal courts, that jurisdiction is to be tested by the conditions of the parties at the commencement of the suit." *Field v. Volkswagenwerk AG*, 626 F.2d 293, 306 (3d Cir.1980). The Second Circuit has stated "[t]he longstanding and clear rule is that if jurisdiction is lacking at the commencement of [a] suit, it cannot be aided by the intervention of a [plaintiff] with a sufficient claim." *Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.*, 700 F.2d 889, 890 (2d Cir.1983). The plaintiffs respond that jurisdiction did exist at the beginning of the suit, and even if it did not, defendants' cases are inapposite because they did not involve complaints amended as of right before a responsive pleading was served.

In *Field*, the plaintiffs originally alleged diversity jurisdiction. At the time of filing, two of the plaintiffs were citizens of Rhode Island, one plaintiff alleged New York citizenship, and the defendant corporation was considered to be a foreign citizen. After discovery, it was revealed that the New York plaintiff was actually a citizen of Czechoslovakia, thus destroying complete diversity with the foreign corporation. The circuit rejected the district court's determination that the Czech plaintiff was a indispensable party, and affirmed the lower court's refusal to permit remedial amendment by replacing a nondiverse claimant with a diverse one, with

retroactive effect to the time the action was commenced, since jurisdiction is tested by the facts as they existed at the time the action was commenced. *See* 626 F.2d at 301–05.

Similarly, in *Pressroom,* a pension plan tried to amend its complaint to substitute plan participants as plaintiffs when it became clear that the pension plan itself did not have a cause of action. Again, the court explained the "longstanding and clear rule" that jurisdiction over the original complaint cannot be aided by the intervention of a plaintiff with a sufficient claim.

Here, American Charities does not seek to aid jurisdiction through intervention of a new plaintiff, but through addition of a new cause of action. Further, the parties seem to have fused the concepts of subject matter jurisdiction and the existence of a cause of action. Even though American Charities lacks standing under the *League of Women Voters* rule relating to the § 1983 cause of action, the parties have not addressed whether subject matter nonetheless exists under 28 U.S.C. § 1331, the federal question provision of the jurisdictional statutes. It is therefore not as clear as defendants seem to believe that jurisdiction was lacking at the outset of this case.

■ Additionally, both *Field* and *Pressroom* concerned situations in which the amendment to the complaint required the leave of the court. Where leave of the court is required, the rule that a court must examine the existence of subject matter jurisdiction as of the time of the filing of the original complaint is applicable because the court is asked to exercise discretion to grant or deny leave to amend, the exercise of which necessarily implicates whether the court has such authority, which would be lacking absent subject matter jurisdiction. Where the plaintiff may amend as of a matter of course, however, no examination of judicial authority is implicated because such amendment is permitted to take place without judicial scrutiny.

Accordingly, the Court finds no procedural or jurisdictional irregularity with respect to the Amended Complaint and American Charities' cause of action under the Declaratory Judgment Act.

### Abstention

The defendants additionally assert that the Court should abstain from hearing this matter under three separate abstention doctrines.

#### *Younger* Abstention

■ The defendants first argue that the Court should abstain under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), because of the existence of an on-going state proceeding. Three factors must be taken into consideration in a determination whether a federal court should abstain under *Younger.* First, the Court must consider whether there is an ongoing state judicial proceeding or an administrative proceeding that is judicial in character. Second, the Court must consider whether there is an important state interest implicated in that proceeding, and third, whether the federal plaintiff will have an adequate opportunity for judicial review of its constitutional claims during or after the ongoing proceedings. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Cullen v. Fliegner,* 18 F.3d 96 (2d Cir.) (1994).

■ Currently pending in state court is a proceeding brought by the defendants against the Children's Charity Fund ("CCF") pursuant to some of the statutes in question. CCF raised the First Amendment arguments raised here in the state court. Connecticut superior court Judge L. Paul Sullivan, in a brief ruling, denied CCF's motion to strike on the basis that "[t]he cases cited by the defendant belie the defendant's contention, as it is clear

that antifraud laws can be enforced against charitable fundraising." (Defs.' Ex. F). The First Amendment argument was also raised as a special defense in CCF's answer to the complaint.

The plaintiffs argue that the CCF proceeding cannot be considered an ongoing state proceeding for *Younger* purposes because the state and federal proceedings involve different parties (CCF resigned its membership in American Charities the first week of July 1998, apparently attempting to moot defendants' anticipated abstention argument). The defendants counter that 1) under certain circumstances, even when a state defendant and a federal plaintiff are distinct entities, they may be considered identical for *Younger* abstention purposes, and 2) because the proper reference point for determining the applicability of *Younger* abstention is the time the federal complaint was filed, and CCF was still a member of American Charities at that time, it is appropriate to consider CCF identical to American Charities.

In *Doran v. Salem Inn,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), the Supreme Court confronted the issue of under what circumstances federal and state plaintiffs should be considered the same for *Younger* purposes. *Doran* concerned town officials who were preliminarily enjoined by the district court from enforcing a local ordinance regulating topless dancing against the appellees, three corporations that operated bars in the town. One of the bars resumed its presentation of topless dancing after filing its federal suit; a state criminal prosecution was instituted against it the next day. The Supreme Court disagreed with the Second Circuit "that all three plaintiffs should automatically be thrown into the same hopper for *Younger* purposes, and should thereby each be entitled to injunctive relief." *Id.* at 928, 95 S.Ct. 2561. The Supreme Court went on to note that "there plainly may be some circumstances in which legally distinct parties are so closely related that

they should all be subject to the *Younger* considerations which govern any one of them." *Id.* at 929, 95 S.Ct. 2561. This however "is not such a case;—while respondents are represented by common counsel, and have similar business activities and problems, they are apparently unrelated in terms of ownership, control, and management. We thus think that each of the respondents should be placed in the position required by our cases as if that respondent stood alone." *Id.*

In *Obeda v. Connecticut Board of Registration,* 570 F.Supp. 1007 (D.Conn.1983), Judge Blumenfeld, examining the factors of ownership, management and control, determined that the state and federal plaintiffs' interests were sufficiently intertwined to warrant *Younger* abstention where Obeda was president and 95% owner of E.I.S. (the state court litigant), and thus a form of alter ego to E.I.S. *Id.* at 1012 n. 5.

In an earlier case, *Aristocrat Health Club of Hartford v. Chaucer,* 451 F.Supp. 210 (D.Conn.1978), the district court, relying on *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) and *Doran,* concluded that *Younger* abstention was required. One of the federal plaintiffs, Conklin, was not a party to the state action, while her employer Joubert, was a plaintiff in both actions. The court found that because the two parties were represented by the same counsel, Conklin's interest would be adequately represented in the state court. However, this holding was premised on the idea that "[i]f the parties were not participants in the *same business enterprise,*" then the *Younger* principles would not apply equally. *Id.* at 219 (emphasis added).

In a more recent confrontation of this problem, *Cornwell v. California Board of Barbering and Cosmetology,* 962 F.Supp. 1260 (S.D.Cal.1997), the district court approached the issue of *Younger* abstention where one of the federal plaintiffs was a membership organization that represented in its membership a state litigant, as was the case at the time this action was filed.

Observing that "[n]o courts appear to have directly confronted this issue," *id.* at 1269, the court went on to review analogous cases dealing with the issue of related parties under *Younger.* The district court ultimately explained that '[t]he problem with the current complaint is that the relief sought is really sought on behalf of all [federal plaintiff's members], not on behalf of [federal plaintiff] itself. . . . [The federal plaintiff] is actually seeking an injunction prohibiting enforcement of the [statute] *as applied to its members.'* *Id.* at 1270 (emphasis added). Thus, the court reasoned it could not enjoin application of the contested statute to those members since they are currently involved in a state administrative proceeding, and therefore the court abstained on *Younger* grounds as to the federal plaintiff. The court also, however, provided the plaintiffs 45 days within which to amend their complaint, presumably to amend their request for relief. American Charities urges this Court to follow the lead of the *Cornwell* court and allow them to amend their complaint for a second time, but also argues that this step would be unnecessary as CCF has already resigned its membership in American Charities.

The defendants cite two out-of-circuit cases for the proposition that the applicability of *Younger* revolves around the status of the case at the time the federal complaint was filed. Indeed, these two cases do state that "the proper time of reference for determining the applicability of *Younger* abstention is the time that the federal complaint is filed." *Sun Refining & Marketing Co. v. Brennan,* 921 F.2d 635, 638 (6th Cir.1990). However, the cases cited by defendants refer to the more specific question of the proper reference point for determining whether or not a particular state proceeding is "on-going," not the time at which identity of the state and federal litigants must be determined.

■■■ Moreover, applying this reasoning in the present situation does not promote the rationale behind the *Younger* absten-tion doctrine of comity and deference to state courts. With the Children's Charity Fund having now withdrawn membership in the plaintiff organization, any ruling in this case would have exactly the same effect as if this suit had been instituted after Children's Charity Fund had withdrawn its membership in American Charities. Thus, the principles that would support abstention under *Younger,* namely comity and deference, simply do not apply, except in a purely formalistic manner. It is well-settled that abstention is the exception, not the rule, and that federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Abstaining on *Younger* grounds in this instance would require the Court to elevate form over substance in order to follow an exceptional course of action.

### *Rooker–Feldman* Abstention

■■■ Next, the defendants argue that abstention is warranted under the so-called *Rooker–Feldman* doctrine. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The *Rooker–Feldman* doctrine states that the federal courts are without authority to review state court judgments where the relief sought is in the nature of appellate review. The defendants contend that the timing and nature of the federal court action suggest that the plaintiffs are in essence seeking federal court review of the state court determination. However, the *Rooker–Feldman* doctrine pertains only to review of a state judgment that has become *final.* *See Philip Morris Inc. v. Harshbarger,* 946 F.Supp. 1067, 1075 (D.Mass.1996) (citing *Feldman,* 460 U.S. at 476, 482, 103 S.Ct. 1303; *Rooker,* 263 U.S. at 416, 44 S.Ct. 149). As the defendants have not represented that there has been a final judg-

ment in the Children's Charity Fund case, the *Rooker–Feldman* doctrine is inapplicable.

*Pullman* abstention

■■■ The *Pullman* doctrine provides for federal court abstention in cases presenting a federal constitutional question that could be mooted or resolved by a state court determination of pertinent state law with a resulting different posture of the federal case. In *Railroad Comm'n v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Supreme Court held that federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided. "However, federal courts need not abstain on *Pullman* grounds when a state statute is not fairly subject to an interpretation which will render unnecessary" adjudication of the federal constitutional question. *Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984). The Supreme Court has cautioned, however, that "[i]n the abstract of course, such possibilities always exist. But the relevant inquiry is not whether there is a bare, though unlikely, possibility that state courts might render adjudication of the federal question unnecessary. Rather, '[w]e have frequently emphasized that abstention is not to be ordered unless the statute is of an uncertain nature, and is obviously susceptible of a limiting construction.'" *Id.* at 237, 104 S.Ct. 2321 (quoting *Zwickler v. Koota,* 389 U.S. 241, 251, n. 14, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967)).

Plaintiff maintains that *Pullman* abstention is inappropriate for facial challenges to statutes under the First Amendment. The Supreme Court has been "particularly reluctant to abstain in cases involving facial challenges based on the First Amendment." *City of Houston v. Hill,* 482 U.S. 451, 467, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987); *see also Dombrowski v. Pfister,* 380 U.S. 479, 489–90, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). To force the plaintiff to suffer the delay of state-court proceedings "might itself effect the impermissible chilling of the very constitutional right he [sic] seeks to protect." *Zwickler,* 389 U.S. at 252, 88 S.Ct. 391. The Supreme Court has not held, however, that courts are precluded from abstaining in all such cases, but rather that the principles against abstention "have particular significance when ... the attack upon the statute on its face is for repugnancy to the First Amendment," 389 U.S. at 397, 88 S.Ct. 528.

■■■ "Abstention is, of course, the exception and not the rule." *City of Houston,* 482 U.S. at 467, 107 S.Ct. 2502. *Pullman* abstention, in particular, "is a narrowly limited doctrine." *Dorman v. Satti,* 678 F.Supp. 375, 384 (D.Conn.1988) (citing *Hawaii Hous. Auth.,* 467 U.S. at 236, 104 S.Ct. 2321). Federal district courts have an "unflagging duty to adjudicate matters properly within their jurisdiction," and may not decline jurisdiction "simply because the issues presented may be decided in another forum." *Greater New York Metro. Food Council v. McGuire,* 6 F.3d 75, 76 (2d Cir.1993). This notwithstanding, the district court is not in dereliction of this duty by abstaining "where a state statute may be construed by a state court in a way that would escape a federal constitutional challenge." *Id.* (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813–13, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). Regardless of the implications of facial challenges under the First Amendment, the Court is unaware of ambiguity in the challenged statutes other than the constitutional vagueness challenge that first requires resolution by the state courts.

■■■ The issue of whether or not charitable solicitation constitutes "trade or commerce" subject to CUTPA regulation has not been addressed by Connecticut appellate courts, and nor has any Connecticut

state court been afforded the opportunity to interpret the allegedly vague language of the sweepstakes statute. Trade and commerce are defined under CUTPA as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value" in the state of Connecticut. Conn. Gen.Stat. § 42–110a(4). The peculiar posture of this case leads to the defendants' assertion that this issue is unsettled, while nonetheless consistently taking the position in their state court prosecutions under this statute that this solicitation activity does fall within the definition of trade or commerce. Ironically, as well, plaintiff states that there is no ambiguity as to the scope of CUTPA or the sweepstakes law, but its acceptance of the legal proposition that solicitation activities can constitute "trade or commerce" is ambiguous, particularly since a defense available to its member organizations in state court prosecutions is that their activities are not "trade or commerce."

The Court recognizes that, in arguing the *Pullman* abstention issue, the parties are now awkwardly taking positions contrary to those they would take in a state prosecution under the statute. Whereas the defendants must consistently hold the position in their state court prosecutions that "trade or commerce" undoubtedly encompasses solicitation activities by charitable organizations, charities being prosecuted for violating the statute would be equally adamant that such activities fall outside the scope of CUTPA. For example, the Defendants' have included as Exhibit D of their Memorandum in Support of Motion to Dismiss a pleading filed in the state court case of *Connecticut v. Children's Charity Fund*, CV 96–0558744 S (Conn.Super.Ct. July 9, 1996).[3] In the memorandum, submitted by the same law firm representing the plaintiffs in this ac-

tion, the Children's Charity Fund argues that CUTPA does not apply to charities precisely because their activities fall outside the definition of trade or commerce. (*See* Ex. D at 2–17).

Now faced with the prospect of federal abstention, American Charities argues that there is no ambiguity as to the meaning of trade or commerce, and indeed, all the state courts to have considered this question have agreed that charitable solicitation does constitute trade or commerce. (*See* Pls.' Opp. to Mot. to Dismiss at 37; Pls.' Mem. in Support of Preliminary Injunction at 33 n. 17). Despite the Court's requirement that "a copy of any opinion or decision cited and not found in the [Connecticut Reporters] . . . be provided to the court," (Order on Pretrial Deadlines, ¶ g), the plaintiff failed to furnish copies of the unreported cases cited in their brief, thus leaving the Court in the position of having to rely on the representations of counsel that these cases uniformly hold that charitable solicitation falls within CUTPA's definition of trade or commerce.

Nonetheless, the parties have pointed to no division of authority from the superior courts that have thus far addressed this issue. Moreover, while American Charities' member organizations presumably defend themselves in state court actions by asserting that their activities are not trade or commerce, the plaintiff in this suit takes the position that even accepting the premise that solicitation activities constitute trade or commerce, the statute burdens its First Amendment rights. Inasmuch as the plaintiffs have taken the position in this suit that the meaning of "trade or commerce" is not ambiguous, it appears that this Court will not be called upon to interpret this statutory language.

The defendants further contend that the Court should abstain on *Pullman* grounds until such a time as such phrases in the sweepstakes statutes challenged by American Charities as unconstitutionally vague,

---

**3.** Until the commencement of the present law suit, Children's Charity Fund was a member

organization of the plaintiff American Charities.

such as "in immediate proximity," have been interpreted by Connecticut state courts. While the defendants do not base their argument on divided state court jurisprudence or the meaning of this phrase, they still maintain that interpretation of this law is difficult enough that the Court should defer to the state courts. While phrases such as "in immediate proximity" are "unsettled" to the extend that state courts have not interpreted them, it is not the case, as the *Pullman* abstention doctrine requires that the issue is necessarily "difficult." Within the context of First Amendment review, interpretation of this phrase is both limited and appropriate for the federal court where defendants have failed to demonstrate specific difficulty of interpretation. *Hawaii Hous. Auth.*, 467 U.S. at 236, 104 S.Ct. 2321.

Accordingly, *Pullman* abstention is not appropriate.

### Motion for Preliminary Injunction

In the Amended Complaint, the plaintiffs requested a preliminary injunction pursuant to 42 U.S.C. § 1983 to enjoin the use of CUTPA and the sweepstakes law, and the accompanying regulations, against charitable solicitations. Having found that the plaintiff American Charities has no standing to bring an action under § 1983, and that plaintiff BRF lacks standing entirely, the sole cause of action left in the complaint is American Charities' request for a declaratory judgment pursuant to 28 U.S.C. § 2201. American Charities therefore must await decision on its claim for declaratory judgment before a request for "such further necessary or proper relief" can be fashioned. 28 U.S.C. § 2202.

Accordingly, the Motion for Preliminary Injunction is DENIED.

### Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part [doc. # 20]. Specifically, American Charities' § 1983 cause of action is dismissed for lack of standing; plaintiff BRF is dismissed as a plaintiff for lack of standing; and the Court declines to abstain under the *Younger, Pullman,* or *Rooker–Feldman* abstention doctrines.

The Plaintiffs' Motion for a Preliminary Injunction is DENIED [doc. # 3].

IT IS SO ORDERED.